244 F.2d 565
 BARNARD-CURTISS COMPANY, and The Seaboard Surety Company, Surety, Appellants,
v.
The UNITED STATES of America for the use and benefit of D. W. FALLS CONSTRUCTION CO.; and Ace Construction Co., Appellees.
 No. 5497.
 United States Court of Appeals Tenth Circuit.
 April 25, 1957.
 Rehearing Denied May 23, 1957.
 
 Robert S. Skinner, Raton, N. M. (Robertson & Skinner, Raton, N. M., and Arthur H. Lindeman, Minneapolis, Minn., were with him on the brief), for appellants.
 Owen B. Marron and T. B. Keleher, Albuquerque, N. M. (John B. Tittmann, Albuquerque, N. M., was with them on the brief), for appellees.
 Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 This is an appeal by Barnard-Curtiss Company, herein called Barnard, from a judgment in favor of D. W. Falls Construction Company, herein called Falls, and a further judgment in favor of Ace Construction Company, herein called Ace. The action was instituted by Falls and Ace against Barnard under 40 U.S. C.A. § 270a et seq., The Miller Act.
 
 
 2
 Barnard held a prime contract with the Bureau of Reclamation for the construction and repair of an irrigation system in New Mexico, known as the Vermejo Project. Barnard's project carried a completion date of June 15, 1955. In January, 1954, Barnard subcontracted part of the work to Falls. Falls' subcontract carried a completion date of December 31, 1954. Barnard retained certain of the work under the prime contract to be done by itself. Some of this work was required to be done before Falls could complete its subcontract. After doing some work on its subcontract, Falls subcontracted the balance thereof to Ace. This subcontract contained a completion date of December 14, 1954. The work covered by Falls' subcontract was not completed by December 31, 1954.
 
 
 3
 Work was still being done under these contracts on May 17, 1955, when a flood of such proportions as to constitute an act of God occurred inflicting serious damage to the project covered by Falls' subcontract and requiring a great deal of rehabilitation work to be done thereafter. Falls did not complete this rehabilitation work and Barnard was required to do so at an additional expense of $38,335.53, for which it has a claim pending with the Bureau of Reclamation.
 
 
 4
 In the complaint Falls and Ace sought to recover the balance due them for work which they had performed under the subcontracts. Barnard's answer contained a general denial, denying that it owed Falls or Ace anything. It also denied that the plaintiffs had performed the obligations of the subcontract. In addition, Barnard filed a counterclaim in which it alleged that Falls failed to complete its contract by the completion date of December 31, 1954, and that this delay together with the defective manner in which its work was done caused Barnard to do extra work in the amount of $14,285.17, for which amount it sought judgment against Falls.
 
 
 5
 It is conceded that the decision is hinged to the effect of the flood upon the legal liabilities of the parties to each other. The law is well established that the intervention of an act of God does not excuse performance of a contract unless loss resulting therefrom is excepted in the contract from the assumed liability.[1] This is also the law of this Circuit.[2] The subcontract did not exclude loss occasioned by an act of God. Falls and Ace did not complete their contract by December 31, 1954, and the subsequent intervention of an act of God did not relieve them from the duty of completing their contract and from liability for additional expenses resulting therefrom, unless Barnard was negligent in some of its obligations and that this negligence prevented completion of the subcontracts.
 
 
 6
 It is appellee's contention that the failure of Barnard to do preliminary work retained by it held them up in their work and without fault on their part prevented them from completing their contract before the intervention of the flood. If sustained by the record, this would be a good defense.[3] The difficulty with this contention is there is no finding by the trier of the facts to this effect. The only finding by the trial court bearing on this question is Finding No. 12, in which the court found that "among the reasons why the subcontracts of plaintiffs were delayed in completion, according to the original completion dates, is the fact that the defendant, Barnard-Curtiss, failed to furnish the services required to be furnished by it before the sub-contracts could be completed."[4] This finding means no more than that Barnard's delay prevented completion of Ace's contract by December 14, 1954, and Falls' contract by December 31, 1954. These dates were nearly five months before the flood. This finding is not tantamount to a finding that because of these delays Falls and Ace without fault on their part were prevented from completing their contracts before May 17, 1955. Without such a finding, Barnard was entitled to judgment on its cross-claim. The evidence is in sharp conflict and the ultimate finding depends upon which line of evidence the trier concludes is entitled to the greater weight.
 
 
 7
 We are not triers of the facts. We do not make findings of fact. We consider only whether the findings are adequate to sustain the judgment. In the absence of a specific finding of the trial court as to whether the delays of Barnard alone were or were not such that it prevented the completion of the subcontracts before May 17, 1955, a final and correct determination of the issues cannot be made.
 
 
 8
 Barnard's contention that the evidence does not sustain the conclusion that its fault caused delay need not be considered at great length. As stated, the evidence is in sharp conflict. A finding that there was some delay caused by Barnard's fault would find support in the record. Whether that fault was sufficient to excuse delay of the completion of the subcontracts beyond the date of the flood is more difficult. Since it is determinative of the case, there should be a specific finding with respect to that fact.
 
 
 9
 Barnard's contention that Ace's claim is not a Miller Act claim lacks merit. The work performed by Ace was a part of the work covered by the prime contract and was work subcontracted by Barnard to Falls. The fact that most of Ace's remaining work was rehabilitation work caused by the flood makes it nonetheless work which must be done under the prime and subcontracts. The court's finding that as to Ace's claim there was an implied contract between Barnard and Ace that Ace do this work and that Barnard was required by his contract to have the work done is well supported by the record. This clearly establishes the claim as a Miller Act claim.
 
 
 10
 When it became apparent that Falls and Ace would be unable to complete their subcontracts on time, Barnard waived timely completion but did not waive its claim, if any, for damages resulting from such failure to perform. As pointed out, unless its delays in completing preliminary work were such as to prevent appellees from completing their work before the flood of May 17, 1955, Barnard was entitled to recover on its counterclaim. The case cannot be satisfactorily disposed of in the absence of a clear finding with respect to this vital issue. The judgment is, therefore, Reversed and the cause is Remanded for further proceeding in conformity with the views expressed herein.
 
 
 
 Notes:
 
 
 [1]
 Williston on Contracts, 1927 Ed. § 1964, p. 3338
 
 
 [2]
 Berg v. Erickson, 8 Cir., 234 F. 817; Broderick Wood Products Co. v. United States, 10 Cir., 195 F.2d 433, 437
 
 
 [3]
 152 A.L.R. 1349; 9 Am.Jur., Building and Construction Contracts, § 50; United States for use of Gillioz v. John Kerns Const. Co., 8 Cir., 140 F.2d 792, 152 A. L.R. 1340
 
 
 [4]
 Emphasis added