**AMERICAN PIPE & STEEL CORPORATION, Appellant,**

v.

**FIRESTONE TIRE & RUBBER COMPANY, Appellee.**

**No. 17158.**

United States Court of Appeals
Ninth Circuit.

July 6, 1961.

Rehearing Denied Aug. 25, 1961.

---

Landon Morris, Los Angeles, Cal., for appellant.

Trippet, Yoakum, Stearns & Ballantyne, Thomas H. Carver, Los Angeles, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and BOLDT, District Judge.

BARNES, Circuit Judge.

The district court's jurisdiction in this case rests on diversity of citizenship. 28 U.S.C. § 1332. This court's jurisdiction is conferred by 28 U.S.C. § 1291.

Defendant-appellee, under contract with the United States, manufactured the "Corporal" missile. Plaintiff-appellant, under contract with appellee, manufactured containers for the missile. Appellee provided appellant with plans for the construction of the containers, the plans calling for the use of torsion bar lever arms, the purpose of which was to hold the missile in place within the container. These arms had a maximum diameter of four inches. Appellee knew (or should have known) that the contract with the government called for five inch diameter bars, and that changes in these plans could only be based on authority obtained from the government to use four inch torsion bars. Such authority was never obtained, and, as a consequence, the anticipated changes had to be made. Effecting the change required appellant to make additional expenditures. Appellee compensated appellant for the cost of the changes (in the amount of $46,259.88), under a provision of the contract requiring it to make an "equitable adjustment" for increased costs due to the execution of change orders. Appellant, however, demanded additional compen-

sation for overhead losses caused by the partial work stoppage during the delay, for all of appellant's facilities had been given over to performance of the contract and at the time of the stop order metal containers were scattered over the floor of appellant's plant. Appellee denied liability for all such "indirect damages," and appellant thereupon brought this action. The trial below was limited to the issue of liability, and since judgment on that issue was for defendant, the damage issue was never reached.

Appellant presents this appeal on an extremely abbreviated record. It contends that there are no factual issues, but only issues of law. The trial court, appellant maintains, concluded improperly, from facts correctly found, that appellee had made an "equitable adjustment" as required under the contract. Appellant contends that the trial court improperly relied upon federal rather than California law to interpret the term "equitable adjustment," but that under either law, such term contemplates the payment of "indirect damages."

Appellee takes issue with all of the substantive propositions advanced by appellant, and also contends that the appeal is defective because it is presented upon an inadequate record, and predicated upon statements made in the trial court's memorandum opinion, which has been completely superseded by the trial court's separate findings of fact and conclusions of law. These latter contentions being preliminary in nature should be first considered.

### 1. The use of the memorandum opinion.

Appellee correctly points out that the trial court's memorandum opinion ordinarily cannot be referred to in order to determine the trial court's findings of fact, when the court has made separate findings,[1] and appellant further notes, correctly, that appellant purports to base some of its contentions upon facts

revealed by the memorandum opinion.[2] Appellee errs, however, in asserting that appellant's case is based "exclusively" on statements contained in the opinion. In fact, the findings of fact and conclusions of law are a sufficient basis for appellant's case without any reference to the memorandum opinion. It is established by the findings that appellant received no monetary compensation for its increased overhead costs (Findings 10, 11, 12, 13 and 14). The ultimate legal question, in light of this fact, is whether the court properly concluded (Conclusion of Law 1, Findings 11 and 13, R. pp. 34-35), that appellee had made the required "equitable adjustment" of appellant's increased costs due to the change order.

While the memorandum opinion, thus, does not serve as the foundation of appellant's appeal, it is useful to provide a more ample understanding of the legal issues before the court. No rule of law, of course, precludes use of the trial court's opinion for such purpose; indeed, the memorandum opinion may be used to supplement otherwise inadequate findings of fact (Stone v. Farnell, 9 Cir., 1956, 239 F.2d 750, 755).

### 2. The limitation of issues at pre-trial.

Appellee contends that the only issues to be decided by the trial court were set forth in the pre-trial conference order, to wit:

(a) Whether or not defendant had reasonable grounds for issuance to plaintiff of the stop work order, above referred to, and

(b) if so, if such stop work order was kept in effect by defendant for a reasonable period of time only.

The second issue is not a matter of dispute on this appeal, having been withdrawn.[3] The remaining issue, appellee contends, was resolved adversely to appellant by Finding 5, and the findings, appellee asserts, are not—by appellant's

1. Ohlinger v. United States, 9 Cir., 1955, 219 F.2d 310.

2. See Appellant's Brief, pp. 9–10.

3. See Finding 9, Tr. p. 33, Tr. p. 41.

own suggestion—subject to attack on this appeal.

However strictly appellee may construe the pre-trial conference order, it is clear that the trial court did not construe it so narrowly. The issues determined by the trial court in deciding this case range beyond the question resolved by Findings 5 and 9. Even if the pre-trial order must be read as narrowly as appellee desires to read it, it must be considered to have been amended by the trial court's findings. That a pre-trial order can be amended in such "de facto" fashion, without formal amendment, is well established.[4]

We turn to the fundamental issues raised by this appeal.

### 3. The prevailing law: state or federal?

This is a diversity case and ordinarily California law would be applicable (Erie R. R. v. Tompkins, 1938, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188). The trial court held, however, that the contract involved must be characterized as a "government contract,"[5] and that therefore federal law applies. We recognize it is difficult to characterize a contract between two private parties as a "government contract." It has been held that the government, though a party to the prime contract, has no contract with the subcontractor and is not liable to him nor is it suable by him (Severin v. United States, 99 Ct.Cl. 435, certiorari denied 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567). Even when the prime contract requires that the government approve subcontractors, there is not sufficient privity of contract between the government and the subcontractor to confer jurisdiction upon the Court of Claims (under the Tucker Act, 28 U.S.C. § 1491) to consider claims brought by the contractor for the benefit of the subcontractor. (Continental Illinois National B. & T. Co. of Chicago v. United States, 1949, 81 F.Supp. 596, 112 Ct.Cl. 563.) Further, if the contract were correctly characterized as a "government contract," the issue would still remain open in the trial court. This court has previously applied state law to a government contract in an action brought by the United States (Alameda County v. United States, 9 Cir., 1941, 124 F.2d 611).

Appellee contends further, however, the Erie case, supra, is inapplicable because we are dealing with an area "in which the policy of the law is so dominated by the sweep of federal statutes" that legal relations within that area must be regulated by federal law. It contends that Erie does not apply to matters affecting the operation of the federal government, where the rule must be uniform throughout the country. (Citing inter alia, Clearfield Trust Company v. United States, 1943, 318 U.S. 363, 63 S. Ct. 573, 87 L.Ed. 838.) This seems to us

4. Bucky v. Sebo, 2 Cir., 1953, 208 F.2d 304, 305. 3 Moore, Federal Practice, 1132.

5. The court's Memorandum Opinion Number Two (of July 19, 1960) cites no cases to support the holding that this was a "government contract," but rests on the recital:

"The contracts between defendant and the United States of America were Government contracts, having as their subject the construction and manufacture of missiles and missile containers for the United States of America * * *. When defendant proposed to enter into the contracts herein involved with plaintiff, notice of the proposed contracts was given to the Government, as provided in the contract between the Government and Firestone. Plaintiff knew Firestone had the prime contract with the Government, and that plaintiff's subcontract was a part of the prime contract. No merit is found in the contention that the contracts herein [between plaintiff and defendant] were not Government contracts."

In the trial court's first Memorandum Opinion, of March 3, 1958 (later ordered reconsidered), the court had used the same reasoning, but had also cited Barnard-Curtiss Co. v. United States, 10 Cir., 1957, 244 F.2d 565, 567.

Section 270a et seq., of Title 40 U.S. C.A. (The Miller Act), is applicable by its terms only to contracts "for the construction, alteration or repair of any public building or public work of the United States."

a better basis upon which to choose the applicable law than that selected by the trial court. The development of the law in this area, however, is still uncertain and unclear. The point is a close one. (See, Note, Federal Jurisdiction: Law Applicable to Government Instruments, 45 Calif.L.Rev. 212.)

■ We agree generally with appellee that the construction of subcontracts, let under prime contracts connected with the national security, should be regulated by a uniform federal law. In the instant case, for example, the prime contract apparently provides that an "equitable adjustment" in the contract price would be made in the event of a stop order. If this adjustment must reflect adjustments made under the subcontract, the cost of our national security will be increased in the process. Congress' intention to decrease the high cost of defense by eliminating excessive profits from defense contracts may be seen in the Renegotiation Act, 50 U.S.C.A.Appendix, §§ 1211–1233.

### 4. The remedy available.

Assuming that the case should be governed by federal law, the trial court concluded that the term "equitable adjustment" does not include compensation for indirect costs. The court thought that appellant's sole remedy, other than compensation for the increased cost of the structural changes, was an extension of time for completion of the contract.

■ The trial court held that the instant case is controlled by United States v. Rice, 1942, 317 U.S. 61, 63 S.Ct. 120, 122, 87 L.Ed. 53. (Memorandum Opinion, R. p. 22). In Rice a plumbing and heating contractor was delayed in commencing work because the government had stopped work on the general contract. This work stoppage was caused by the *"unexpected* discovery of an un-

suitable soil condition." (Emphasis added.) The court held that plaintiff was not entitled to compensation for indirect costs caused by such unexpected eventualities. Under the contract, an "equitable adjustment" was made when the plaintiff's time for performance was extended, relieving plaintiff of any liability for failure to perform within the time specified in the contract. Whether Rice, supra, is controlling or not, is beside the point.

■ What constitutes an "equitable adjustment" is a question of fact. United States v. Callahan Walker Const. Co., 1942, 317 U.S. 56, 59, 63 S.Ct. 113, 87 L.Ed. 49; Happel v. United States, 8 Cir., 1960, 279 F.2d 88, 91.

■ The court below found that such an equitable adjustment had been reached. It also *impliedly* found (Finding 7) that appellant had sustained no damage by reason of the stop order, such order being applicable to only a portion of the work appellant was performing; that other work could go on; that in so performing the work, appellant was utilizing its entire yard space. While it is true the court postponed any consideration of damages until after the question of liability had been determined, its finding of fact that there was no evidence "that redesigning the torsion bar lever [had] help up work for 30 days" related primarily to the issue of liability, and only secondarily to the issue of damages.

■ Both the finding of no further damage, and that an "equitable adjustment" of all damage had been made, are findings of fact, not subject to review or change by this appellate court unless clearly erroneous. (Fed.R.Civ.P. 51, 28 U.S.C.A.) On the record before us, particularly, we cannot come to any such conclusion as a matter of law.

The judgment is affirmed.