PREMIER ROOF CO., a corporation, American Casualty Company of Reading, Pennsylvania, Appellants,

v.

UNITED STATES of America for the Use and Benefit of ALPACA ELECTRIC CORPORATION, Appellee.

No. 18124.

United States Court of Appeals Ninth Circuit.

March 26, 1963.

Rehearing Denied May 24, 1963.

Gill & Baldwin and Ernest R. Baldwin, Los Angeles, Cal., for appellants.

Stapleton, Weinberg & Isen and F. G. Stapleton, Los Angeles, Cal., for appellee.

Before JERTBERG and DUNIWAY, Circuit Judges, and FOLEY, Senior District Judge.

JERTBERG, Circuit Judge.

Before us is an action under the Miller Act (40 U.S.C. §§ 270a, 270b, 270c and 279d). The parties are Alpaca Electric Corporation (hereinafter "Alpaca"), a licensed electrical subcontractor, plaintiff in the district court and appellee here, Premier Roof Co. (hereinafter "Premier"), a general contractor, and American Casualty Company of Reading, Pennsylvania (hereinafter "American"), defendants in the district court and appellants here.

No issue is raised as to the jurisdiction of the district court nor as to the applicability of the provisions of the Miller Act.

Premier was awarded a prime contract by the United States of America and on or about November 25, 1959, entered into a written contract with the United States under which Premier agreed to furnish all labor and materials and to perform all work required for the rehabilitation of miscellaneous facilities at Vandenberg Air Force Base, Lompoc, California. Premier, as principal, and American, as surety, made, executed and delivered their bond in the amount of $94,191.00 in the usual form as required under said Miller Act. On or about December 5, 1959, the United States gave Premier notice to proceed with the work.

On or about January 6, 1960, Premier and Alpaca entered into a written subcontract whereunder Alpaca agreed to perform electrical and other work in connection with the prime contract performance of Premier for the total sum of $49,500.00. Alpaca commenced work under the contract on January 12, 1960.

Under Section GC–6 "*Subcontractors,*" the prime contract provides, in part, as follows:

"* * * If, for sufficient reason, at any time during the progress of the work the Contracting Officer determines that any subcontractor is incompetent or undesirable he will notify the contractor accordingly, and steps will be taken immediately for cancellation of such subcontract."

Paragraph 3 of the subcontract, provides, in part, as follows:

"* * *, and any applicable provisions between the owner and contractor affecting the work herein described, shall have the same effect as if written in full in this subcontract, except insofar as such provisions are specifically changed by this subcontract."

On April 4, 1960, the contracting officer, by written notice to Premier, stated:

"Your electrical sub-contractor is considered incompetent and undesirable in that he failed to submit material lists and shop drawings within the time required by the contract specifications, and has failed to accomplish his work in a timely manner.

"Numerous verbal requests to you to bring pressure to bear on this subcontractor have failed to produce results, thereby causing serious delay in the scheduled completion of the work.

"It is expected that you will take immediate and positive corrective action and accomplish the work by other means."

Such written notice was admitted into evidence for the limited purpose of showing that Premier had received a notice from the contracting officer to remove Alpaca from the job and not as evidence of the truth of the statements contained in it. On April 6, 1960, Premier terminated the subcontract with Alpaca and caused its workmen to be removed from the job.

On November 3, 1960, Alpaca filed its complaint in the district court against Premier and American and alleged therein that Alpaca performed certain labor and services and furnished the material at the request of Premier of the total value of $41,905.00 against which Premier was entitled to credit of $8,569.02 for certain checks made payable jointly to Alpaca and certain of Alpaca's suppliers. The complaint alleged that there was due, owing and unpaid the sum of

$33,358.98 for which amount, plus interest, Alpaca prayed judgment against American and Premier.

The answer of American, for want of sufficient information or belief, denied all of the allegations in the complaint except that Alpaca's action arises under the Miller Act and the furnishing of the bond and its acceptance by the United States. The answer of Premier admits that it is entitled to a credit of $8,569.02 for payments made pursuant to the subcontract; and stated that the last labor was performed by Alpaca on April 5, 1960, but generally denied the remaining allegations of the complaint. By affirmative defenses, Premier alleged: (1) that Premier paid to Alpaca the sum of $8,569.02 pursuant to the subcontract and that no further payments are due, owing or unpaid to Alpaca; (2) that the consideration for the subcontract failed in that Alpaca failed to supply a performance bond; that it failed to perform the work required in accordance with the plans and within the time specified in the contract and that Alpaca failed to perform the work in a competent and workmanlike manner; and (3) that Premier was forced to terminate the subcontract because of failure of Alpaca to complete the contract in accordance with its terms, and that Alpaca was paid for more work than it actually did causing damage to Premier in the amount set forth in the counterclaim.

Premier's answer also contained a counterclaim based upon breach of contract in which it alleged that Alpaca failed to perform within the terms of the subcontract; that Premier terminated the subcontract on April 5, 1960; that Premier hired third persons to furnish materials and supplies to complete the work required to be done and that, as a result, Premier was damaged in the sum of $5,400.00.

Following trial to the court sitting without a jury, which extended over a period of several days, the district court ordered judgment in favor of Alpaca and against American and Premier in the sum of $32,495.69, with costs of suit and interest from date of judgment. The salient findings of fact and conclusions of law of the district court are as follows:

"V

"Thereafter the plaintiff, at the special instance and request of the defendant Premier and between January 6, 1960, and April 7, 1960, performed certain labor and services of the reasonable value of $17,588.38 and supplied materials and supplies of the reasonable value of $29,352.-40; and the total reasonable value of the labor and materials thus furnished being $46,940.78.

"VI

"The defendants are entitled to deductions in the total amount of $14,445.09 so that the net amount due plaintiff is $32,495.69.

"VII

"The date the last labor was performed and materials furnished by the plaintiff for the defendants was on April 7, 1960; a period of more than ninety days and less than one year elapsed since the date of the last work and the commencement of this action.

"CONCLUSIONS OF LAW

"From the foregoing, the Court concludes:

"1. Plaintiff did not breach its subcontract.

"2. Plaintiff is entitled to judgment in the amount of $32,495.69 which is the reasonable net value of the labor and materials furnished by plaintiff to defendant Premier.

"3. Plaintiff is not entitled to a judgment for interest from July 17, 1960.

"4. Defendant Premier is entitled to take nothing by its counterclaim.

"In accordance with the foregoing Findings of Fact and Conclusions of Law it is Ordered, Adjudged and Decreed that the plaintiff, Alpaca

Electric Corporation, have judgment against the defendants in the sum of Thirty-Two Thousand Four Hundred Ninety-five and 69/100 Dollars ($32,495.69) with interest from date of judgment at the rate of seven per cent (7%) together with plaintiff's costs in this action."

Following the entry of judgment, Premier filed its motion for a new trial on substantially the same grounds as are herein urged for reversal of the judgment. Following a hearing on the motion, the district court denied the same.

Appellants specify as errors of the district court:

1. The granting of judgment for the appellee under the theory of *quantum meruit* in disregard of the terms of the subcontract;

2. The conclusion that the appellee did not breach the subcontract; and

3. The findings V and VI are clearly erroneous.

■ The record reveals that the fact of termination of the subcontract by the unilateral action of Premier was accepted and considered by the court and counsel throughout the trial as having occurred not because of breach by Alpaca of any provisions of the subcontract, but wholly because Premier was required to terminate the subcontract under the provisions of the prime contract above quoted and the written notice from the contracting officer of the United States also above quoted. The fact of such termination was not in issue before the district court. We hold that such termination is not in issue on this appeal.

■ In respect to appellants' contention that the district court erred in concluding that Alpaca did not breach the subcontract, we find from our review of the record that there is substantial evidence to support the implied finding of the district court that Alpaca was not in default under any of the provisions of the subcontract. Hence, we hold that the district court did not err in concluding that Alpaca did not breach any of the provisions of the subcontract.

■ Our discussion of appellants' remaining contentions is predicated on two premises. The first premise is that the termination of the subcontract by the unilateral action of Premier was not wrongful but was based upon a contract obligation of Premier to the United States of America under the prime contract to which obligation Alpaca agreed under the provisions of the subcontract. The second premise is that neither Alpaca nor Premier breached the subcontract. In connection with the second premise, it is to be noted that the district court expressly concluded that Alpaca did not breach the subcontract and that there is no finding or conclusion, express or implied, that Premier breached the subcontract.

Thus, there was presented to the district judge the situation of a partially performed contract which was terminated without breach of the same by either party to the contract and under which further performance of the subcontract by Alpaca was prevented without fault on the part of Premier. The district court held that under such circumstances Alpaca could recover from Premier the amount of the reasonable value of labor and materials furnished by Alpaca from which amount should be deducted sums included in said amount for labor and materials which were paid by Premier and not Alpaca.

■ Under the unusual circumstances of this case where the subcontract was terminated without fault by either party before complete performance by Alpaca, we believe that Alpaca could properly maintain an action for the reasonable value of labor and materials furnished by Alpaca. In our view, the district court did not err in so holding. Clearly the amount of such reasonable value should be reduced by sums paid by Premier to or for the account of Alpaca and by sums paid by Premier for labor and materials included in the amount of such reasonable value which were not paid by Alpaca.

We find no error in such holding by the district court.

▮▮ This brings us to an inquiry, called for by the specifications of error, to the question of whether the amount of the court's award was properly determined.

In respect to the findings contained in Paragraph V of the findings, we are unable to say that such findings are clearly erroneous. Our review of the record has led to the conclusion that there is sufficient evidence in the record to support the district court's findings as to the reasonable value of labor and services performed and materials and supplies furnished by Alpaca.

The finding contained in Paragraph VI that Premier is entitled to deductions in the total amount of $14,455.09 is of little assistance. The finding simply mentions a lump sum amount which amount we are unable to reconcile with the evidence or the pleadings, but are left to speculation on how the district court arrived at such amount. However, by resorting to the memorandum opinion filed by the district court with its decision, we are able to identify the separate items constituting the total deductions which the district court allowed. We are unable to say from our review of the record that Finding VI in respect to the items constituting the aggregate of deductions allowed is clearly erroneous. Nevertheless, resort to the memorandum opinion makes it clear to us that the district court failed to give Premier an additional credit of $8,689.02 to which Premier is clearly entitled. Resort to the memorandum opinion in these circumstances is proper. See American Pipe & Steel Corp. v. Firestone Tire & Rubber Co., 292 F.2d 640 (9th Cir., 1961). As above noted, the complaint alleges, and the answer admits, that Premier is entitled to a credit of $8,569.-02 for certain checks issued by Premier made payable jointly to Alpaca and certain of its suppliers. The record further reveals that Alpaca conceded during the trial that Premier was entitled to an additional credit of $120.00. Clearly, Premier is entitled to such credit. For such reason, the judgment awarded by the district court in favor of Alpaca must be modified by reducing the same in the amount of $8,689.02. As so modified, the judgment of the district court is affirmed except as to further modifications which may be required on remand to the district court. Such remand is required because of the fact that the record reveals that there is, and was, pending in the district court a suit against Premier by Alpaca's supplier, General Electric Supply Company, on an unliquidated claim. During the course of the trial, Alpaca conceded that the claim, when liquidated and paid by Premier, would constitute an additional credit to be allowed Premier. No mention of such contingent claim appears in the findings nor the written memorandum of the district court. The judgment contains no provision to protect Premier against double payment if, and when, the claim should be liquidated and paid by Premier. See Houston Fire & Casualty Insurance Co. v. United States of America, by and for the use of the First State Bank of Denton, Denton, Texas, 217 F.2d 734 (5th Cir., 1954); and United States of America for the Use and Benefit of Kilsby v. George and National Surety Corporation, 243 F.2d 83 (5th Cir., 1957).

The judgment is hereby modified by reducing the same in the amount of $8,-689.02, and the cause is remanded to the district court with directions to the district court to make a finding of fact in respect to the claim set forth in the suit brought against Premier by General Electric Supply Company, a conclusion of law on such finding, and such modification of the judgment as modified herein as may be required to protect Premier against double payment on the claim of General Electric Supply Company if such provision shall be found proper by the district court.

Each party shall bear its own costs on this appeal.