79 F.3d 953
 40 Cont.Cas.Fed. (CCH) P 76,911, 96 Cal. Daily
Op. Serv. 2227,
96 Daily Journal D.A.R. 3720
NEW SD, INC., dba BEI Systron Donner Company, Plaintiff-Appellant,
v.
ROCKWELL INTERNATIONAL CORPORATION, Defendant-Appellee.
 No. 94-15723.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 18, 1995.
Decided April 1, 1996.
 
 Oliver L. Holmes, Sonnenschein Nath & Rosenthal, San Francisco, California, for the plaintiff-appellant.
 Allan J. Joseph and Anna M. Rossi, Rogers, Joseph, O'Donnell & Quinn, San Francisco, California, for the defendant-appellee.
 Appeal from the United States District Court for the Northern District of California; Charles A. Legge, District Judge, Presiding. No. CV-93-03086-CAL.
 Before: SCHROEDER, FLETCHER and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 This is an action for breach of a subcontract by New SD, Inc., dba BEI Systron Donner Company, (Systron) against Rockwell Int'l Corp., which had the prime contract with the Air Force for development of military hardware. The parties are non-diverse. The action was filed in state court; Rockwell removed on the footing that federal law controls; and the district court declined to remand under authority of American Pipe & Steel Corp. v. Firestone Tire & Rubber Co., 292 F.2d 640 (9th Cir.1961). Systron took an interlocutory appeal, and we affirm.
 
 
 2
 * Rockwell contracted with the Air Force to develop a space-based anti-ballistic missile called a SCIT as part of the Strategic Defense Initiative. In turn, it subcontracted with Systron to design, fabricate and deliver a navigational component known as an inertial measurement unit.
 
 
 3
 Without being required to, the parties to the subcontract included language adopted from government procurement regulations, including a DX-AZ priority rating and Federal Acquisition Regulation 52.249-6, which provides that when a prime contractor receives a notice of termination from the government, the prime is to assign its rights and interests under the subcontract to the government so that the government may settle or pay. Several "slow downs" were ordered during the first two years of Systron's performance, as was one lengthy stop-work order, and eventually Rockwell terminated the contract under a termination for convenience clause. Systron submitted claims for costs incurred due to the slow down and stop-work orders, and filed suit in state court for breach of contract, services rendered, quantum meruit, declaratory relief and an accounting.
 
 
 4
 Rockwell removed on the ground that Systron's action arises under federal law since the construction of subcontracts, let under prime contracts connected with the national security, are governed by federal law. Systron moved to remand on the ground that the court lacked subject matter jurisdiction because its action did not arise under the laws of the United States for purposes of 28 U.S.C. § 1331. The district court denied the motion, reasoning that "[i]nasmuch as the Systron Donner subcontract was issued under a prime contract between Rockwell and the United States Air Force, and such prime contract concerns national security, this Court finds that the disputes alleged in Systron Donner's complaint raise substantial issues of federal law." Systron's motion for certification was granted, and we agreed to hear the appeal.
 
 II
 
 5
 Systron makes a number of forceful arguments that we believe are foreclosed by our opinion in American Pipe. Among other points, Systron emphasizes that its causes of action are purely state law claims; that the second prong of "arising under" jurisdiction set out in Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)--requiring federal law to be necessary to resolution of the cause of action--is not met because construction of federal law isn't required to resolve its state law claims; that there is nothing inconsistent between the law of California and federal common law; and that we should not feel bound by American Pipe, as it does not explicitly concern federal question jurisdiction, was decided 35 years ago, and isn't in sync with the modern view, articulated most recently by the Supreme Court in Boyle v. United Technologies Corp., 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).
 
 
 6
 American Pipe was a diversity action. American Pipe subcontracted with Firestone to make containers for missiles Firestone was fabricating under contract with the United States. Firestone misquoted certain specifications, requiring change orders, delay and a partial work stoppage, all of which, American Pipe complained, cost it money. At trial, American Pipe sought an "equitable adjustment" under the terms of its subcontract, but lost; on appeal, it argued that the district court had improperly relied on federal rather than California state law to interpret the term "equitable adjustment." Observing that California law would ordinarily be applied in a diversity action under Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we nevertheless adopted a different basis for choosing the applicable law for "matters affecting the operation of the federal government, where the rule must be uniform throughout the country." American Pipe, 292 F.2d at 643-44. Thus, we held that "the construction of subcontracts, let under prime contracts connected with the national security, should be regulated by a uniform federal law." Id. at 644.
 
 
 7
 We cannot meaningfully distinguish American Pipe. Both cases concern a dispute between a prime government contractor and its subcontractor over performance of what we characterized in American Pipe as a "government contract." The national security is equally implicated. And here, as there, the cost of national security stands to be increased in the process. Id. at 644.
 
 
 8
 Although American Pipe involved the appropriate choice of law whereas the issue here is federal question jurisdiction, American Pipe refused to apply Erie in deference to federal common law on essentially identical facts. This we couldn't have done unless on government contract matters having to do with national security, state law is totally displaced by federal common law. Where the federal interest requires that "the rule must be uniform throughout the country," as we said was the case in American Pipe, id. at 643, then the "entire body of state law applicable to the area conflicts and is replaced by federal rules." Boyle, 487 U.S. at 508, 108 S.Ct. at 2516 (indicating that the need for a uniform federal rule supplies the requisite "conflict" for federal preemption). When federal law applies, as American Pipe holds that it does to this type of contract, it follows that the question arises under federal law, and federal question jurisdiction exists. See International Ass'n of Machinists, AFL-CIO v. Central Airlines, Inc., 372 U.S. 682, 693 n. 17, 83 S.Ct. 956, 962 n. 17, 10 L.Ed.2d 67 (1963) (citing American Pipe in support of holding that dispute over a contract with term requiring resolution by board of adjustment arises under federal law within the meaning of § 1331).
 
 
 9
 Systron suggests that instead of applying American Pipe, we should follow the Seventh Circuit's lead in Northrop Corp. v. AIL Systems, Inc., 959 F.2d 1424 (7th Cir.1992). AIL Systems involved a teaming agreement between a prime government contractor and a potential subcontractor, who were non-diverse parties. Our colleagues found no conflict between federal policy and application of state law such that federal question jurisdiction could be exercised over what was otherwise purely a private contractual dispute. We see nothing in AIL Systems which calls for revisiting our own precedent. As the Seventh Circuit's opinion points out in distinguishing (but not denigrating) American Pipe, the teaming agreement at issue there, which is basically an understanding that one party will get subcontracting work if the other secures a prime contract, differs from actual "subcontracts which govern actual work being performed on federal projects [that] implicate federal interests much more directly." Id. at 1428.
 
 
 10
 Because the district court correctly applied American Pipe, we affirm.
 
 
 11
 AFFIRMED.