MaddeN, Judge,
delivered the opinion of the court:
Plaintiff, a corporation, made a contract with the Government to repair a timber pier at the Naval Academy at Annapolis, for a price of $33,486. A contract drawing indicated that there were 36 piles in the pier which were known to be damaged, and which plaintiff was to replace. The contract also provided that the contract price was based upon the assumption that 30 additional piles would be found defective when the pier was dismantled, and that if it should turn out that a greater or lesser number of piles than 30 should have to be replaced, an “adjustment in the contract price will be made in accordance with Article 3 of the contract.”
The contract contained Articles 3 and 4 in the usual form, Article 3 authorizing the contracting officer to make changes in the contract within its general scope, and providing for adjustments in the contract time and price to compensate for such changes, and Article 4 providing that if unforeseen subsurface or latent conditions should be encountered the contracting officer should, after investigation, make such changes in the contract as should be necessary to meet those conditions, and, like Article 3, it provided for adjustments in the contract time and price. Section 27 of the General Provisions of the Specifications provided that if a proposed change under Article 3 involved a cost of more than $500, estimates should be made by a board appointed by the Chief of the Bureau of Yards and Docks, which board should report its estimates to him, who, as contracting officer, should determine the amount of the change in time and price, subject to the right of the contractor to appeal to the head of the department as provided in Article 15. The contract further provided that in such cases the cost of *503 additions should be the actual estimated cost to the contractor, due allowance being made in the discretion of the contracting officer for overhead and general expense, plant charges, and other expense items of a similar nature, and 10% for profit. Section 2, paragraph 2-01, of the specifications is referred to later herein.
Shortly after the work was started, it was discovered that marine borers had infested and seriously damaged the old piling. The defendant thereupon stopped the work pending its investigation and decision of what should be done. The work remained suspended for 15 days, and the investigation disclosed that all of the piles in the pier would have to be replaced. Then the Government’s officer in charge directed the plaintiff to resume work and to remove and replace all the old piles, and advised it that the changes in contract time and price would be determined in accordance with Article 3 and Section 27 referred to above. A board was appointed which submitted to the Chief of the Bureau of Yards and Docks a report estimating $26,398 as the additional cost, including 10% profit, and 72 days as the necessary extension of time, including the 15 days during which the work had been suspended. The report said that it included nothing for the contractor’s expenses during those 15 days. Plaintiff wrote its acceptance of the report “with. the understanding that doing so will not prejudice” its claims for those expenses, and filed separately a claim for those expenses.
Plaintiff completed the work within the contract time, as extended, and was paid the agreed amount. On June 12, 1934, the contracting officer advised plaintiff that since its claim for expenses during the 15 days of suspension was a claim for damages due to delay, the Bureau of Yards and Docks was unable to pass upon it and it should be submitted to the Comptroller General. Plaintiff thereupon submitted its claim to the Comptroller General, and did not appeal from the decision of the contracting officer to the head of the department. The Comptroller General denied the claim on August 19,1936, and upon plaintiff’s request for a reconsideration, reaffirmed that denial on April 23, 1937. On June 17, 1937, the plaintiff wrote the Secretary of the *504 Navy, as shown In finding 11, and was advised by the Acting Secretary that jurisdiction over the ■ availability of funds for the settlement of claims was vested in the. Comptroller General and that, since that officer had made his decision, the Navy Department could take no further action in the matter.
The Government and the plaintiff agree that the plaintiff was damaged in the amount $558.67, for which plaintiff has not been compensated, by the 15-day suspension of the work in February 1934.
The' Government urges that plaintiff’s claim may' not be considered because it failed to pursue its remedy under the contract in that it did not appeal from the decision of the contracting officer to the head of the department, within the 80 days specified in Article 15 of the contract or at any time. We disagree with this contention. The contracting officer’s message of June 12, 1934, was not a decision on'the merits of the plaintiff’s claim. It was a disclaimer of jurisdiction to decide it under the provisions of the contract, and an unqualified statement that jurisdiction to decide it was in another officer of the Government, wholly outside the Navy Department. If that advice was correct, the plaintiff has lost no rights here by following.it. If it was not correct, the plaintiff still has lost no rights as a consequence of being misled by it. The advice was given by the Chief of the Bureau of Yards and Docks, the official in the Department who was held out to the public and the plaintiff as an official competent to bind the Government by committing it to important contracts, and making important decisions in regard to them. If one dealing with the Government could not even safely trust this official’s direction as to where to go nest, in search of a decision upon his claim in relation to the very contract which this very officer had made with him, he would be hopelessly lost in the mazes of the Government’s organization. In fact, as the events showed, if the plaintiff had been so skeptical as' to appeal to the head of the department for confirmation of its high official’s direction as tó where to go next, that advice would have been confirmed. It was in fact confirmed by the Acting Secretary when the plaintiff finally got back to asking his advice, *505 after it had followed the advice of the contracting officer as to where to go for relief, and had received no relief there. So the Government lost nothing in the way of an opportunity for the Secretary of the Navy to correct an erroneous decision, if it was erroneous, as to where jurisdiction to decide plaintiff’s claim lay, or to decide the claim upon its merits, since the Secretary entertained the same erroneous view, if it was erroneous, and would have refused to decide plaintiff’s claim on its merits, and would have sent the plaintiff to the Comptroller General, where it already had been sent, and where it in fact went. We think the Government should not lead a contractor through such a maze, and then urge that he has lost his rights because he failed to travel up and back one more dead-end street. We shall consider the plaintiff’s case upon its merits.
Upon the merits of the case we think that the plaintiff is entitled to recover. Section 2, paragraph 2-01, of the specifications, as shown in finding 3, specifically enjoins the bidders to base their bids upon the renewal of only thirty-piles. It then states “Should a greater or less number of bearing piles be necessary, adjustment in the contract price will be made in accordance with Article 3 of the contract.” We think that this provision, written by the Government, would convey to the mind of a bidder the impression that any and all additional costs to him, of whatever character, arising out of the necessity for the placing of additional piles would be paid for. Paragraph 27 of the General Provisions of the specifications, which also appears in finding 3, contains nothing to negative this impression. It says “In. determining the change in price, the cost of additions shall be the estimated actual cost to the contractor * * *. Tn arriving at the amount of the change, due allowance shall be made in the discretion of the contracting officer for overhead and general expense, plant charges, and other expense items of a similar nature.”
The final paragraph of the report of the Board on Changes, quoted in finding 7, indicates that it must have regarded the contract as being somewhat ambiguous as to whether the cost of the suspension of the work should be included in the additional amount allowed for the change, under the specifica *506 tions. At any rate the Board thought it was necessary to expressly negative any idea that they had made such an allowance.
The contracting officer’s letter to the plaintiff, quoted in finding 11, indicated that that official, and probably the Board on Changes, had excluded the cost of the suspension of work from the additional compensation because of some legal distinction which they drew between a claim for damages for delay and an allowance of additional costs resulting from additional time needed to complete the changed contract, after the changes were decided upon. They did allow such additional costs, by way of overhead, for the future performance of the additional work. They seem to have refused to allow the costs of suspension because they regarded such an allowance as beyond their jurisdiction.
As we see it, the only proper distinction which the con-tracking officer might draw under the contract here in question, would be between, on the one hand, delays, not involving any breach of contract by the Government, but necessary in order that a proper and economical performance of the contract should result, and on the other hand, delays resulting from breaches of contract by the Government, and not necessary to efficient performance. It may be that only the former kinds of delays may be properly compensated for out of an appropriation for a particular project, and that the latter must be made the subject of a separate claim or suit against the Government. * '
We think the contracting officer was mistaken in classifying the costs of the plaintiff’s suspension of work in the latter class. The suspension was necessary and useful to the Government in order to get a good job done. It could have been properly paid out of money appropriated for or allocated to the job. And, as we have said, the Government in the contract, construed as we have construed it, promised to pay such additional costs, and did not, as it frequently does in its contracts, as interpreted, reserve the right to make changes without compensation for the delays involved in arranging for the changes. See United States v. Rice, et al., 317 U. S. 61.
*507 We conclude, therefore, that the plaintiff was, under its contract, entitled to be compensated for the expenses flowing from the making of'the changes here made in the contract, and may recover $558.67.
It is so ordered.
Whitakee, Judge-; and Littleton, Judge, concur.
Jones, Judge, and Whaley, Chief Justice, took no part in the decision of this case.