**FARNSWORTH & CHAMBERS CO., Inc.**

v.

**The UNITED STATES.**

No. 276–60.

United States Court of Claims.
July 20, 1967.

Wilson Sims, Nashville, Tenn., attorney of record, for plaintiff.

Russell W. Koskinen, Washington, D. C., with whom was Acting Asst. Atty. Gen., Carl Eardley, for defendant.

Before COWEN, Chief Judge, JONES, Senior Judge, LARAMORE, DURFEE, DAVIS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Paul H. McMurray with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinion filed on January 12, 1967. Exceptions to the commissioner's findings and recommended conclusion of law were filed by the parties and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the

commissioner's findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is, therefore, entitled to recover and judgment is entered for plaintiff in the sum of $89,638.43.

OPINION OF COMMISSIONER*

McMURRAY, Commissioner:

■ This case involves a claim for an equitable adjustment concerning damages resulting from a changed condition [1] encountered by plaintiff in attempting to perform a construction contract entered into with the Corps of Engineers, United States Army. An adjustment in the contract price was denied by the Corps of Engineers Claims and Appeals Board, primarily, it appears, because the Board did not accept plaintiff's report that there was a large opening in the bed of the river (a crevice, cavern, channel, trench or hole).

On June 24, 1964 the commissioner filed his report. The court handed down an opinion on June 11, 1965, 346 F.2d 577, 171 Ct.Cl. 30, which found that plaintiff is entitled to recover and entered judgment to that effect, stating "[t]he amount of recovery will be determined, in accordance with this opinion, under Rule 47(c)." Stein Bros. Mfg. Co. v. United States, 337 F.2d 861, 162 Ct.Cl. 802 (1963).

The opinion of the court also stated that determination of the amount due plaintiff:

\* \* \* should not assess against the defendant those extra costs, if any, of dewatering the cofferdam, which are fairly attributable to causes other than the changed conditions—such as leaks in cofferdam walls or an inadequate or incomplete grouting program (in-

cluding grouting which plaintiff expected to perform). Nor should the defendant be charged again for the leakage through the timber crib for which it has already paid.

A formal trial was convened for the purpose of taking proof with a view to determining the amount of damages to which plaintiff might be entitled under the Changed Conditions article of the contract. During the trial plaintiff offered three witnesses, (1) a cost engineer, (2) a licensed Civil Engineer and general contractor and (3) a vice-president of plaintiff corporation experienced in general construction. These witnesses testified with respect to the subject of damages and explained in considerable detail the manner in which records were kept concerning the type of work performed, the number of hours or days worked in connection with the changed condition encountered, the type of material and equipment used and the costs involved.

Employees and representatives of defendant were present during the period when strenuous efforts were being made by plaintiff to handle the problem involved and were greatly concerned about getting the job done. Representatives of both plaintiff and defendant maintained a daily record of the labor, material and equipment used to combat the changed condition. Each party maintained notes and they were able to resolve any discrepancies found and reach an agreement before plaintiff's monthly reports of claimed costs were filed. Defendant also made a thorough audit of all items of plaintiff's claim from actual books and records.

■ All who were concerned with the operation were aware that records were being made which could be used, if necessary, to support a claim for dam-

---

* The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 57 (a).

1. The costs to a contractor, attributable to a changed condition encountered during

the performance of a contract, or changes in the contract, can be determined by means of an equitable adjustment. Thomas Earle & Sons v. United States, 100 Ct.Cl. 494 (1944).

ages or an equitable adjustment of the contract price.[2] Testimony at the trial showed that representatives of defendant had access to the records maintained by plaintiff and, on occasion, made revisions and offered suggestions with respect to keeping those records.

Defendant did not offer any witnesses at the trial concerning damages. Counsel for defendant cross-examined plaintiff's witnesses and indicated a desire to have the pertinent facts reflected in the record made at the trial.

At the conclusion of the trial on July 14, 1966, proof was closed and, on the same date, counsel were directed to submit memorandum reports to the commissioner on or before August 15, 1966. Each party submitted a report on August 15, 1966. Those reports are a part of the record in the case concerning the issue of damages.

In view of the court's restriction on recovery of grouting which plaintiff expected to perform, a review of plaintiff's grouting plans is in order. Plaintiff submitted the original grouting program to defendant on March 10, 1954 which provided for a program of drilling 3-inch grouting holes 5 feet apart on centers to depths averaging 45 feet within and around the periphery of the cofferdam cells. This planned grout curtain was to be placed prior to the beginning of any dewatering operations. It extended 1,065 feet laterally and included 213 3-inch holes, totaling 9,483 vertical feet of drilling.

A second set of drawings of intended grouting was submitted by plaintiff on April 4, 1954. This second plan was similar to the first. Neither of these grouting programs was put into execution.

On the basis of advice from plaintiff's consulting geologist the grouting program was reduced to one with holes on 20-foot centers, with provision for filling in on closer centers as the need arose.

The geologist made no recommendations with respect to the final depths for grouting, leaving that to the contractor. The drilling and grouting operations were to be carried on simultaneously.

Defendant's foundation engineer, Charles Rochell, testified that there was little difference between the original plan and the one which began on 20-foot centers with intermediate holes as needed.

On July 23, 1954 when only 39 holes of the originally-planned 213 holes had been drilled to the anticipated depth and grouted, plaintiff attempted to dewater the cofferdam pool, but abandoned the effort when it was unsuccessful. Some holes which had been drilled were left open. The material placed in the grout curtain as of July 23, 1954 was 4,685 cubic feet, less than 10 percent of the estimated quantity in the dewatering plan of March 10, 1954.

Defendant's resident engineer wrote plaintiff on August 2, 1954 expressing his dissatisfaction with the results of plaintiff's efforts in the grouting program and the "utter inadequacy" in reducing the water level in the inside cofferdam pool more than $2\frac{1}{2}$ feet with a pumping capacity of 30,000 gallons per minute. He concluded by requesting that the contractor submit a written plan of operation for reducing the leakage in both the subsurface and cofferdam, outlining additional methods, equipment and shifts, if contemplated, and a schedule for the additional work which was to be done.

On August 6, 1954 the contracting officer wrote plaintiff again emphasizing that much valuable time had been lost in an effort to correct a most pressing and immediate problem, namely, the correction of cofferdam structural defects and the establishment of an adequate grout cut-off in the cofferdam foundation rock.

Plaintiff responded by letter of August 10, 1954 to the contracting officer

---

2. Under the facts in this case, no equitable adjustment could have been made until completion of the work involved. Mac-

Dougald Constr. Co. v. United States, 122 Ct.Cl. 210 (1952).

notifying him of a changed condition described as "subsurface or latent conditions at the site differing materially from those indicated in the contract documents."

Work on the changed condition from August 3, 1954 through October 5, 1954 included clearing the solution channel under Cell D–5, driving a 60-foot H-beam into the solution channel, building a temporary earthen dike which extended roughly from the Cell D–4 area to Cell A–1, and driving a temporary sheet pile wall. Plaintiff also poured concrete, a black clay blanket and other assorted plugging materials into the changed condition area in an attempt to stop the flow of water. The audited records establish that plaintiff grouted on 1 day only during this period, namely on August 12, 1954 when plaintiff attempted to pump grout into the solution channel with no satisfactory results. Between October 6 and October 12, 1954, 3 days were spent plugging the changed condition and 4 days were spent on the grouting program.

The work performed from October 13 through November 28, 1954 was concerned solely with plaintiff's additional grouting program in the Cell D–5 area in the general vicinity of the changed condition.

Final grout performance in the changed condition area reveals that plaintiff drilled three less than the 44 holes contemplated, of which 33 were not below the foundation grade; grouted 16 less holes; performed 950 lineal feet less drilling; and used approximately 3,400 cubic feet less materials than was anticipated for grouting this area at the time of its bid.[3]

■ With regard to damages claimed, plaintiff presented no invoices or other documentary evidence to show that defendant was in error in adjustments made with respect to material costs claimed, and/or to refute defendant's adjustments of the time shown for labor and equipment used. Plaintiff's use of Associated Equipment Distributor (hereafter AED) rental rates for contractor-owned equipment was disputed by defendant. Plaintiff's actual cost of rental from outside sources was allowed by defendant, but defendant applied plaintiff's actual intercompany equipment charges for all contractor-owned equipment. The AED rates claimed are not an indication of plaintiff's additional equipment costs, but are higher than its costs and include a profit, which is also included in another portion of this claim. The intercompany equipment charges are meant to show actual cost of depreciation, ownership, maintenance and operation of plaintiff's equipment and are the proper measure of recovery on which to base a reasonable profit. Additional equipment expenses not included in this intercompany charge, such as insurance, taxes, or storage, will be reimbursed by the 10 percent overhead allowed on all direct charges.

■ The findings of fact made by the court review in detail the serious problem encountered and the steps taken by plaintiff to combat the changed condition involved. The record supports a determination that the job did not progress from August 10, 1954 to November 28, 1954, a period of 110 days. Plaintiff worked $57\frac{1}{4}$ days on the changed condition, $1\frac{3}{4}$ days on the timber crib for which he was reimbursed, 51 days on its grouting program of which the entire period from October 13 through November 28, 1954 (47 days) was devoted solely to its grouting program.[4]

■ Defendant has stipulated that plaintiff was assessed $68,000 in liquidated damages for combined delays of 170 days on three generating units at $400 per day. The record shows that plaintiff was delayed $57\frac{1}{4}$ days on the changed condition in the Cell D–5 area, which, when applied against the delays assessed on all three generating units,

---

3. Details of plaintiff's proposed and actual grouting programs are set out in finding 7.

4. The grouting was required to be performed under the contract.

totals 135¼ days.[5]  Therefore, plaintiff is entitled to the remission of liquidated damages to the extent of $54,100.

Accordingly, it is found that plaintiff is entitled to (1) recover the amount of $35,538.43 as an equitable adjustment under the contract costs chargeable to the changed condition encountered in the Cell D–5 area, and (2) the remission of $54,100 in liquidated damages assessed for late performance; a total recovery of $89,638.43.

5.  The delay due to the changed condition is detailed in finding 21.