UNITED STATES *v.* RICE ᴇᴛ ᴀʟ., RECEIVERS FOR D. C. ENGINEERING COMPANY, INC.

No. 31. Argued October 22, 1942.—Decided November 9, 1942.

*Mr. Valentine Brookes* argued the cause, and *Solicitor General Fahy, Assistant Attorney General Shea,* and *Messrs. Melvin H. Siegel, Morton Liftin,* and *Robert L. Stern* were on the brief, for the United States.

*Mr. R. Aubrey Bogley,* with whom *Messrs. Frederic D. McKenney, John S. Flannery,* and *G. Bowdoin Craighill* were on the brief, for respondents.

MR. JUSTICE BLACK delivered the opinion of the Court.

We granted certiorari to review a judgment against the United States by the Court of Claims, 95 Ct. Cls. 84, interpreting a widely used standard form construction contract in a manner alleged to be in conflict with this Court's interpretation of an analogous contract in *Crook Co.* v. *United States,* 270 U. S. 4.

Respondent agreed to install plumbing, heating, and electrical equipment in a Veterans' Home to be erected at Togus, Maine, while another contractor was to do the general work of preparing the site and constructing the building. Respondent agreed, for a stipulated price, to begin work upon notice to proceed and to finish by the time the work had been completed by the principal contractor. If respondent failed to complete the work within the time thus set, the Government was entitled to terminate the contract or to require the payment of liquidated damages. The length of time allowed the principal contractor under his contract, subject to certain qualifications discussed below, was 250 days, and it was into this schedule that respondent was to coördinate its own activity.

The Government gave notice to the general contractor to begin work on May 9, 1932. On May 12, respondent was notified to begin; and early in June its superintendent arrived in Maine with tools and equipment. Upon his arrival he found that the general contractor had been stopped by the Government because of the unexpected discovery of an unsuitable soil condition. It became necessary to change the site of the building and to alter the specifications, and, because of the delay attendant upon preparing a new foundation, respondent was unable to begin work until October. As a consequence, overhead expenses accumulated during the period of delay, and much of the work which respondent's employees otherwise would have done either during warm weather or after the building was enclosed, was done outside in cold weather.

Because of the delay and pursuant to the adjustment clauses of the contract, the Government extended the time of performance by respondent; and, because of structural changes, it re-adjusted the amount due. It increased payments to the principal contractor, reduced the payment to respondent by about $1,000 because of construction economies under the new plans, and waived any claim to liquidated damages for the period of the extension. The hospital was completed some months after it would have been finished had it not been for the change of plan.

The respondent was paid the full amount agreed on for the work it did. It then sued for about $26,000 for damages alleged to have been suffered due to delay for which the Government was responsible. The Court of Claims held the Government was liable for damages resulting solely from delay, but found that $13,600 of the alleged loss was due to respondent's own faulty estimate and financial conditions, and that $3,000 of it was caused by respondent's and the principal contractor's delays. Respondent sought no review of denial of this part of its

claim. However, the court concluded that the balance claimed, $9,349, arose from overhead costs during the summer of 1932 when the new foundation was being prepared, and from a decrease in labor effectiveness resulting because much of the work had to be done outside in cold weather. The judgment rendered under this conclusion is what we have before us.

The chief issues of the case are whether the delay in commencing the construction was a breach of contract by the Government; whether, regardless of the answer to that question, respondent was entitled to 'an equitable adjustment for damages resulting from the delay, in addition to the extension of time already granted; and whether respondent is barred from any recovery because it failed to appeal certain decisions affecting its contract to the chief officer of the department. Under the view we take of the first two of these questions, it is unnecessary to answer the third.

I. The Government contends, as it did in the *Crook* case, *supra,* that the change in specifications resulting in delay was not a breach of the contract, but in accordance with its terms; that the extent of its obligation for permitted changes was fixed by the contract; and that for delay the Government was required to do no more than grant an extension of time. Put another way, the Government concedes that, if an alteration of plan required respondent to use an extra 50 tons of steel, the Government would be liable for the value of the steel and the cost of installation; but it argues that under the terms of this contract an extension of time should be accepted as full equitable adjustment for all damages caused by the fact that the work was done at the later period made necessary by the permitted change. Essentially it repeats the doctrine of *Chouteau* v. *United States,* 95 U. S. 61, 68: "For the reasonable cost and expenses of the changes made in the construction, payment was to be made; but for any in-

crease in the cost of the work not changed, no provision was made."

We agree with this view. We do not think the terms of the contract bound the Government to have the contemplated structure ready for respondent at a fixed time. Provisions of the contract showed that the dates were tentative and subject to modification by the Government. The contractor was absolved from payment of prescribed liquidated damages for delay, if it resulted from a number of causes, including "acts of Government" and "unusually severe weather." The Government reserved the right to make changes which might interrupt the work, and even to suspend any portion of the construction if it were deemed necessary. Respondent was required to adjust its work to that of the general contractor, so that delay by the general contractor would necessarily delay respondent's work. Under these circumstances it seems appropriate to repeat what was said in the *Crook* case, that "When such a situation was displayed by the contract it was not to be expected that the Government should bind itself to a fixed time for the work to come to an end, and there is not a word in the instrument by which it did so, unless an undertaking contrary to what seems to us the implication is implied." *Crook Co.* v. *United States, supra,* 6. Decisions of this Court prior to the *Crook* case also make it clear that contracts such as this do not bind the Government to have the property ready for work by a contractor at a particular time. *Wells Bros. Co.* v. *United States,* 254 U. S. 83, 86; *Chouteau* v. *United States, supra;* cf. *United States* v. *Smith,* 94 U. S. 214, 217.

As pointed out, the delay here resulted from a change in specifications made necessary by discovery of soil unsuitable for foundation purposes. The Government having reserved the right to make such changes upon discovery of "subsurface and (or) latent conditions at the

site materially differing from those shown on the drawings or indicated in the specifications," delays incident to the permitted changes cannot amount to a breach of contract. If there are rights to recover damages where the Government exercises its reserved power to delay, they must be found in the particular provisions fixing the rights of the parties.

II. Two of the Judges of the Court of Claims thought consequential damages resulting from delay were recoverable under paragraphs 4 and 3 of the contract. These paragraphs [1] deal with closely related problems. Article 3, entitled "Changes," governs the procedure under which the Government may alter the specifications of the contract for general causes. Article 4, entitled "Changed Conditions," governs the procedure under which the Government may alter the contract to meet unanticipated physical conditions. Article 4 incorporates by reference

---

[1] "Article 3. Changes.—The contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and (or) specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. . . .

"Article 4. Changed conditions.—Should the contractor encounter, or the Government discover, during the progress of the work, subsurface and (or) latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, the attention of the contracting officer shall be called immediately to such conditions before they are disturbed. The contracting officer shall thereupon promptly investigate the conditions, and if he finds that they materially differ from those shown on the drawings or indicated in the specifications, he shall at once, with the written approval of the head of the department or his representative, make such changes in the drawings and (or) specifications as he may find necessary, and any increase or decrease of cost and (or) difference in time resulting from such changes shall be adjusted as provided in Article 3 of this contract."

the same machinery of adjustment as that specified in article 3. Both clauses essentially provide that, if changes are made affecting an increase or decrease of cost or affecting the length of time of performance, an equitable adjustment shall be made.

Clearly, questions of interpretation in clauses so similar should, if possible, be resolved in the same fashion in each of them. Clause 4 was added to the standard form contract since clause 3, and we therefore turn first to decisions interpreting the latter clause. The Court of Claims, relying on principles announced in the *Chouteau, Wells,* and *Crook* cases, *supra,* has uniformly held that the "increase or decrease of cost" language in Art. 3, and in similar clauses, is not broad enough to include damages for delay; that "It was never contemplated . . . that delays incident to changes would subject the Government to damage beyond that involved in the changes themselves." *Moran Bros. Co.* v. *United States,* 61 Ct. Cls. 73, 102; and for the same view, see *McCord* v. *United States,* 9 Ct. Cls. 155, 169; *Swift* v. *United States,* 14 Ct. Cls. 208, 231; *Griffiths* v. *United States,* 74 Ct. Cls. 245, 255.

Were this a matter of first impression, we would again come to the same conclusion regarding this clause. It seems wholly reasonable that "an increase or decrease in the amount due" should be met with an alteration of price, and that "an increase or decrease . . . in the time required" should be met with alteration of the time allowed; for "increase or decrease of cost" plainly applies to the changes in cost due to the structural changes required by the altered specification and not to consequential damages which might flow from delay taken care of in the "difference in time" provision. The provision as to time serves the large purpose of removing from persons in the position of respondent liability for "delay" beyond the stipulated date for which they might otherwise have

their contract terminated or might be required to pay liquidated damages without fault.

Despite the similarity of the two clauses, a minority of the court below has in this instance concluded that they may be distinguished and that respondent is entitled to damages for delay under clause 4. In supporting this view, respondents here rely primarily on *Rust Engineering Co.* v. *United States,* 86 Ct. Cls. 461, 475, where the court below distinguishes the two clauses by saying that the type of change contemplated in clause 4 is more basic than that under clause 3, and that therefore different liabilities should attach:

"The changes made necessary by reason of the conditions encountered in excavating for the foundation of the building were not reasonable changes within the scope of the drawings and specifications as contemplated in Art. 3 of the contract, but represented important changes based upon changed conditions which were unknown and materially different from those shown on the drawings or indicated in the specifications. Such changes were, therefore, clearly not within the contemplation of either party to the contract at the time it was made. . . ."

And see *Sobel* v. *United States,* 88 Ct. Cls. 149, 165.

No such strained distinction between paragraphs 3 and 4 can stand. It does not help to argue that the changes made under clause 4 "are not within the contemplation of either party," since the changes made under clause 3 are also not contemplated in advance. Both clauses deal with changes made necessary by new plans or new discoveries made subsequent to the signing of the contract. For delays incident to such unanticipated changes, the contractor was, under either section, to be granted a "compensating extension of time." *Wells Bros. Co.* v. *United States, supra,* 86.

In this case there were two consequences of the discovery that the Home could not be built as originally planned. One was an alteration of specifications, which resulted in a slight cut in respondent's outlay and in its compensation. The other was the delay itself, and for this the time necessary to perform the contract was equitably adjusted by extension, thereby relieving respondent of liquidated damages which could otherwise have been imposed. Under the terms of the contract, it is entitled to no more.

*Reversed.*