**JOHN McSHAIN, INC.**
v.
**The UNITED STATES.**
No. 173–63.

United States Court of Claims.
July 16, 1969.

Alexander M. Heron, Washington, D. C., attorney of record, for plaintiff. John A. Whitney and Murray S. Simpson, Jr., Washington, D. C., of counsel.

George M. Beasley, III, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, LARA-MORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Lloyd Fletcher with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on September 4, 1968. Exceptions to the commissioner's opinion, findings and recommended conclusion of law were taken by both parties and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's opinion, findings, and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, judgment is entered for plaintiff in the sum of $117,600.06.

## OPINION OF COMMISSIONER

FLETCHER, Commissioner:

The plaintiff, John McShain, Inc., seeks to recover damages in its own behalf and in behalf of several of its subcontractors for an alleged breach of warranty by defendant in connection with a construction contract for an extension of the State Department Building entered into between the plaintiff and defendant, acting through the General Services Administration (GSA). The damages claimed by plaintiff arise solely out of alleged Government-caused delays.[1] The dispute was the subject of

---

1. In fact, plaintiff has released defendant from any and all claims which it might have had under the contract excepting, however, its claim "arising out of the furnishing by the Government of illegible and inadequate plans and drawings and the substitution of other drawings therefor * * *". In defendant's view, the language of the exception clause in the release relates only to alleged delay in preparing and substituting new drawings for the original ones. However, the exception

administrative proceedings before the GSA Board of Contract Appeals for an equitable adjustment under the contract. However, the Board properly denied plaintiff's appeal for relief on the ground that it lacked jurisdiction over the subject matter. See, United States v. Utah Construction & Mining Co., 384 U.S. 394, at 412, 86 S.Ct. 1545, 16 L.Ed. 2d 642 (1966). In view of the Board's action, and by mutual consent of the parties, a trial was held here to determine fully all questions of liability and damages. See, Stein Bros. Mfg. Co. v. United States, 337 F.2d 861, 162 Ct.Cl. 802 (1963), partially overruled on other grounds in United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, ftn. 5, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966); George Bennett v. United States, 371 F.2d 859, 178 Ct.Cl. 61 (1967). In light of the detailed findings of fact below, it has been concluded that plaintiff is entitled to recover for a breach of warranty by defendant and, further, that plaintiff's damages should be computed on the basis of three months' delay for a total amount of $69,195.28.[2] In addition, since defendant has not shown that plaintiff bears no liability to its subcontractors for an equivalent delay suffered by them, plaintiff is entitled to recover the further sum of $48,404.78.[3] Blount Bros. Constr. Co. v. United States, 346 F.2d 962, 965, 171 Ct.Cl. 478, 483 (1965) and Morrison-Knudsen Company, Inc. v. United States, 397 F.2d 826, 852, 184 Ct.Cl. 661, 703 (1968). Cf. Severin v. United States, 99 Ct.Cl. 435 (1943), cert. denied, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944).

 It is a well established rule of law that when the Government issues detailed drawings and specifications for a contractor to follow, there is an implied warranty that conformance with such drawings and specifications will result in satisfactory completion of the work. See, for example, United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918), and Hol-Gar Mfg. Co. v. United States, 360 F.2d 634, 175 Ct.Cl. 518 (1966). Although Government-furnished plans need not be perfect, they must be adequate for the task or "reasonably accurate." Standard Steel Car Co. v. United States, 67 Ct.Cl. 445, 472 (1929). Here, the defendant, in its haste to meet a fiscal year deadline, failed to have the drawings prepared with ordinary care, and they were issued before necessary checking was accomplished. Such "failure to be reasonably careful in the preparation of the plans" is basis for a breach claim. Jefferson Construction Company v. United States, 392 F.2d 1006, 1012, 183 Ct.Cl. 720, 729–730 (1968). The evidence clearly demonstrates that the drawings and addenda originally provided by the defendant were not sufficiently legible or coordinated to permit satisfactory construction of the desired building. Thus, defendant is liable for breach of warranty in the furnishing to plaintiff of defective drawings. Laburnum Construction Corp. v. United States, 325 F. 2d 451, 163 Ct.Cl. 339 (1963).

The defendant has taken a two-pronged and somewhat inconsistent position. First, it says that the drawings were so obviously deficient that plaintiff should have recognized the defects and anticipated resulting delay. Almost in the same breath, however, it contends that the drawings were in fact adequate and

---

clause clearly is sufficiently broad to cover plaintiff's claim that the inadequacy of the original drawings and plans relating to reinforcing steel for the building's columns, which defect resulted in a design change, also delayed plaintiff because of its inability to obtain prompt delivery of newly specified reinforcing steel. So far as plaintiff is concerned, however, that delay ran approximately concurrently with the delay involved in preparing and furnishing the new drawings.

2. The methods used in arriving at this amount are described in detail in finding 38 below.

3. See findings 39–48 below for the computations of damages to each subcontractor totaling the above amount.

sufficient for plaintiff as an experienced contractor to have constructed the building as planned.

Defendant's first position, of course, is intended to charge plaintiff with actual or constructive knowledge of defects in the original plans so as to preclude plaintiff from relying upon defendant's implied warranty that the drawings were adequate. See, for example, Wunderlich Contracting Co. v. United States, 351 F.2d 956, 173 Ct.Cl. 180 (1965), and cases cited therein.

■■ However, the true condition of the drawings was unknown to the plaintiff at the time it bid the project. Seemingly, even the defendant was unaware of the full extent of the inadequacies and lack of coordination in the drawings, particularly after the addenda were issued. There was no reason for the plaintiff to suspect that legible drawings could not be easily secured to replace those which were unreadable, or that the addenda drawings did not correct most, if not all, of the coordination errors apparent in the original drawings. Further, plaintiff was under no contractual or legal obligation to inspect the drawings to determine their adequacy for construction purposes prior to the contract award. Rather, its study of the contract documents was merely for purposes of estimating its bid, and it has not been shown that plaintiff knew or should have known how defective the drawings actually were. Therefore, plaintiff's pre-bid examination of the drawings did not render the implied warranty inoperative through waiver or estoppel, and plaintiff may invoke such warranty as a basis for recovery. Thompson Ramo Wooldridge, Inc. v. United States, 361 F.2d 222, 231, 175 Ct.Cl. 527, 541 (1966).

■ The effect of defendant's second position is to deny that any breach of warranty occurred. On the facts of this case, however, this contention must be rejected because there is substantial evidence to support the contrary finding that the original drawings and addenda were in fact defective and inadequate.

The inadequacy of the drawings resulted in GSA's decision to issue a new set of corrective and clarification drawings, known as "A-drawings," and to change the design of reinforcing steel for the building's columns. This involved substantial delay during the early part of the contract period, i. e., August 1, 1957, when plaintiff had planned to proceed, through February 1, 1958, when the A-drawings relevant to the work at hand had been finally prepared and issued, and the larger reinforcing steel bars had been delivered. During this period, plaintiff was not significantly delayed by any other related or concurrent delay for which the defendant would not be liable, and therefore it may recover damages for idleness and other consequences of its delay. Cf. Wunderlich Contracting Co. v. United States, supra, where, despite many errors in the Government's specifications, the Korean War contributed heavily to the difficulties encountered with the result that the contractor was unable to prove that its delays were directly caused by the Government. Cf., also, Vogt Bros. Mfg. Co. v. United States, 160 Ct.Cl. 687 (1963), with United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942).

After February, 1, 1958, there were additional delays, some of which plaintiff alleges were due to deficiencies in the drawings, some of which were shown to have been the contractor's responsibility, and some of which were not unusual for a project of this size and complexity and for which neither party would be responsible. However, the major source of delay after February 1 was the large number of change orders (nearly 700) issued by defendant with respect to which plaintiff admittedly has received equitable price adjustments and extensions of time. It is entitled to nothing more for these delays. United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942). Plaintiff has not satisfactorily proven that any delay

after February 1, even if assumed to be partially attributable to inadequate drawings, was not in fact "concurrent or intertwined with other delays" for which the defendant is admittedly not liable, and recovery in this respect is, therefore, precluded. Commerce International Company, Inc. v. United States, 338 F.2d 81, 90, 167 Ct.Cl. 529, 543 (1964); Wunderlich Contracting Co. v. United States, *supra,* 351 F.2d 956, 173 Ct.Cl. at 193.

■ Because of the many delays flowing from the numerous change orders for which plaintiff has already been compensated, it would be improper to adopt plaintiff's contention that the contract period as a whole must be used in computing the delay involved. While it is admittedly difficult to calculate with precision the amount of delay actually suffered by plaintiff during the early period which was directly caused by defendant and for which plaintiff is entitled to recover, mathematical exactness is not required. It is sufficient if plaintiff furnishes the court a reasonable basis for a computation although the result may be only an approximation. F. H. McGraw & Co. v. United States, 130 F.Supp. 394, 399, 131 Ct.Cl. 501, 510 (1955). Under the circumstances of this case, it has been concluded that the most satisfactory method of determining the compensable delay period is by a comparison between the amount of work plaintiff reasonably could have completed during the six-month delay period (August 1957 through January 1958) and the amount of work it actually accomplished during that period. The evidence of record supports a finding that plaintiff actually performed approximately one-half of the work it could reasonably have done but for the delay. Therefore, it is concluded that plaintiff should recover on the basis of a three-month delay period both for itself and in behalf of its subcontractors who have made claims against plaintiff and who were delayed an equal amount of time in starting their work.