**BROOME CONSTRUCTION, INC.**

v.

**The UNITED STATES.**

No. 375–72.

United States Court of Claims.

Feb. 20, 1974.

Paul H. Holmes, Hattiesburg, Miss., atty. of record, for plaintiff; Holmes & Dukes, Hattiesburg, Miss., of counsel.

Raymond B. Benzinger, Washington, D. C., with whom was Acting Asst. Atty. Gen., Irving Jaffe, for defendant.

Before DURFEE, Senior Judge, and KASHIWA and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge.

This contract dispute was submitted to the court on cross-motions for summary judgment. The case has been well briefed and all material facts essential to determination of the issues of liability are stipulated. Two claims are made. Plaintiff seeks a Wunderlich Act[1] review of a decision of the Department of Agriculture Board of Contract Appeals[2] on its remission of liquidated damages claim and seeks breach of contract damages in the sum of $18,331.34 for delay alleged to have been the fault of defendant. The board denied the latter claim for lack of jurisdiction and rejected the claim for an extension of contract time which would have brought remission of liquidated damages ($950) assessed for a 10-day delay in contract completion at the rate of $95 per day. We find neither claim sustainable in law. To the extent material to this decision, the facts may be summarized as follows:

Soil Conservation Service Contract No. 12–10–220–1448 was awarded to Broome Construction Company, of Mis-

---

1. 41 U.S.C. §§ 321, 322.

2. AGBCA No. 232 (Oct. 6, 1971), 71–2 BCA ¶ 9100.

sissippi, on June 24, 1966. The contract was in the amount of $153,398.57 and allowed a performance time of 158 calendar days for improvement in 8.5 miles of the Toposhaw Creek Channel in the Yalobusha River Watershed. Toposhaw Creek Channel empties into the Yalobusha Channel. A separate contract had been awarded on May 17, 1966, to Atlas Construction Company for the improvement of that section of the Yalobusha Channel where the Toposhaw Channel enters.

At the bid opening on May 31, 1966, and at a preconstruction conference on July 11, 1966, plaintiff was advised by Government representatives that it would be necessary that Atlas complete its work prior to plaintiff's starting excavation work. Plaintiff's representative agreed to this condition but stated that plaintif would like to be authorized to proceed with clearing the Toposhaw Channel. Plaintiff also stated that it was in the process of buying or renting a new dragline that would be ready by the time it was to commence actual excavation. A contemporaneous memorandum of the conference understandings, which is a part of the record in the case, states that "all left with a thorough understanding of what would be expected."

Plaintiff was notified on July 6, 1966, to start work within 20 days and to complete all work within 158 calendar days. However, by letter dated July 7, 1966, the contracting officer notified plaintiff that, pursuant to mutual agreement, Suspend Order No. 1 was issued. This was so that the second contractor, Atlas, could complete work and get out of plaintiff's way. The order suspended all of plaintiff's operations under the contract with the exception of the clearing of the channel right-of-way. Plaintiff agreed to the order and to Modification No. 1 which changed the contract to allow plaintiff to do the clearing while under the suspend order. The contracting officer's letter transmitting the same concluded with the following sentences: "We would also like for you to submit your schedule of operations covering all items of work. In preparing your schedule, please keep in mind that *it will be approximately October 1, 1966 before channel excavation can commence.*" [Emphasis supplied.]

A second order to suspend work was issued August 23, 1966, because of plaintiff's failure to sign and return Modification No. 1, and for other reasons not now material. A third order issued August 30, 1966, directed plaintiff to resume *all* work. This was in error, since it was actually intended that only the work permitted by Modification No. 1 should proceed. Plaintiff was not misled and did not rely on the order, and the board properly so found. A correction was issued on September 15, 1966.

On September 14, 1966, plaintiff leased a dragline from Tri-State Equipment Company, Inc., at an aggregate rental of $234,518.64 for a 48-month period. Under terms of the lease, the first 12 installments were $8,610.17 each and the next 36 at a rate of $3,644.33 per month. The dragline was delivered to the site on September 19, 1966.

Work on the Yalobusha Channel by Atlas progressed more slowly than expected and plaintiff did not receive Work Order No. 4 authorizing excavation work on all items of the contract until December 5, 1966, effective on that date.

Plaintiff's claim for breach of contract is based on rental costs actually paid for the period from October 1 to December 5, 1966. Defendant, while not admitting liability, says that a proper computation of damages would be computed by using the total 48-month period of the lease and allocating to the average monthly rental over that period the sum of $10,423.06 to the claimed period of 2 months and 4 days of delay instead of plaintiff's calculation which provides a figure of $18,331.34 at the higher base rate for the first 12 months under the lease. For reasons which will later appear, we do not have to resolve the quantum issue.

*The Breach Claim*

■■ In declining to make findings or to adjudicate the merits of the breach claim, the AGBCA decision pointed out that plaintiff sought relief under the disputes article of the contract, Article 6 of the General Provisions, which limits jurisdiction of the board to any dispute concerning a question of fact arising under the contract, excluding breach claims whether for purposes of granting relief or making binding findings of fact. United States v. Utah Constr. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L. Ed.2d 642 (1966). In this the board was clearly correct. It also ruled that in the absence of a suspension-of-work or other similar provision designed to compensate a contractor for increased costs resulting from Government-caused delays, the board did not have jurisdiction under the disputes article to compensate a contractor for such delays. This, too, is a proposition of law so firmly established as to require no discussion or citation here.

■ Plaintiff now comes to court alleging breach and pointing out that it is undisputed that the contractor here was delayed until December 5, 1966, in channel excavation. This is unquestionably so and the circumstances which occasioned it have been related. While the delay period alleged by plaintiff approximates 5 months, claim is made, as indicated above, only for the shorter period from October 1, 1966 to December 5, 1966, on the assertion that defendant promised availability of the worksite by October 1. The contracting officer admitted that plaintiff was caused a delay in the use of his dragline, but said, as did the board, that there was no authority under the contract for payment of delay. The question to be resolved here is whether there was a breach or whether the delay was excusable under the contract terms. In resolving this question it is necessary to examine Article 11 of the Special Conditions section of the contract agreed to by the parties. It states in pertinent part:

## 11. SUSPENSION OF WORK

(a) The Contracting Officer may order suspension of the work in whole or in part for such time as he deems necessary due to weather *or such other conditions are he considers unfavorable for the satisfactory prosecution of the work.*

(b) When the Contracting Officer orders suspension of the work * * * , the contract completion date shall be extended a full calendar day for each calendar day during suspension of the work * * * .

* * * * * *

(d) When the Contracting Officer orders any suspension of the work under the provisions of this clause, *the Contractor shall not be entitled to any costs or damages resulting from delays due to such suspension of the work.* [Emphasis supplied.]

Pursuant to the foregoing article, defendant formally suspended plaintiff's right to proceed and made formal modifications of the contract which, by mutual agreement, permitted plaintiff to proceed with clearing operations while allowing the other contractor to finish his work so that plaintiff could later proceed without his interference. The suspension clause anticipated and provided for delays, granting the contractor extensions of time therefor but specifically prohibiting recovery of delay costs such as plaintiff claims now and not providing for any equitable adjustment. Atlas' work created a condition "unfavorable for the satisfactory prosecution of the work" by plaintiff. The delay occasioned here is squarely within the four corners of the contract and is of the type anticipated by it. Plaintiff's loss is not compensable by defendant without more.

■ Plaintiff, however, says that the defendant is liable because the delay was wrongfully occasioned by defendant. In support of this proposition plaintiff points to a file memorandum dated September 14, 1967, by a Government pro-

curement agent who in that memorandum discussed the character of the lease between plaintiff and Tri-State Equipment Company for the dragline. The memorandum recounts a conversation with the Tri-State vice president about the lease and the way charges thereunder were arrived at and whether plaintiff was actually bound thereunder for the full term of the lease, even if the equipment was idle part of that time. Upon assurances of the lessor that plaintiff was so bound and that the costs were reasonable for such expensive equipment, the memorandum concluded with this sentence:

> * * * Therefore, it is the foregone conclusion that Mr. Broome did in fact suffer the amount of the lease from date of agreement even though the piece of equipment was idle due to delay in his operation as caused by the Soil Conservation Service and the contractor on the Yalobusha portion of the channel.

Plaintiff says that the foregoing is an admission of fault by defendant. Aside from the fact that this is not shown to be an authorized statement or a finding under the disputes clause, even if it was it does not demonstrate that the delay was wrongful. The most it does demonstrate is that the delay was perhaps concurrently caused by defendant and by the other contractor. Where there is no proof that the delay was wrongful or "where the defendant's delay is concurrent or intertwined with other delays," there can be no recovery. Commerce Int'l Co. v. United States, 167 Ct.Cl. 529, 543, 338 F.2d 81, 90 (1964).[3] John McShain, Inc. v. United States, 412 F.2d 1281, 1285, 188 Ct.Cl. 830, 835 (1969); Roberts v. United States, 357 F.2d 938, 849, 174 Ct.Cl. 940, 957 (1966).

 Absent an unqualified warranty or express covenant, the Government is not liable for delays in making a worksite available where it seeks to do so in good faith and the delay is not unnecessary, unreasonable, or is not de-fendant's fault. United States v. Howard P. Foley Co., 329 U.S. 64, 67 S.Ct. 154, 91 L.Ed. 44 (1946); L. L. Hall Constr. Co. v. United States, 379 F.2d 559, 177 Ct.Cl. 870 (1966); Commerce Int'l Co. v. United States, *supra*, 338 F. 2d at 85, 167 Ct.Cl. at 535–536. Plaintiff says that in this case, however, defendant did promise to make the worksite available by October 1, 1966, and failed to do so. Plaintiff says it was at the bid opening on May 31, 1966, that this date was first promised but there is no corroboration of this and defendant denies it. If there was any binding promise by the Government, it must be found in the only evidence before us, the letter of July 7, 1966, transmitting Suspend Order No. 1 and Modification No. 1. As heretofore quoted, that letter only said "it will be *approximately October 1, 1966* before channel excavation can commence." [Emphasis supplied.] Excavation was actually delayed until December 5, 1966, as noted. The Government did not covenant to have the site available on a definite date. Plaintiff and defendant did agree at the bid opening that plaintiff's excavation performance would have to await completion of work by the other contractor. Plaintiff was afforded extensions of time to accommodate this circumstance, but there is no evidence that defendant at any time obligated itself to compensate plaintiff for standby time or idled equipment. The parties here did what they agreed to do. The understanding was clear from the beginning and it was at the beginning that plaintiff indicated it had decided to get the dragline which, in fact, was ordered on July 1, 1966, as shown by the order therefor in the record before the court. How then can plaintiff say that it relied on the July 7 letter as the basis for securing the equipment? We do not believe that it did so. It is more reasonable to conclude from the record that since delivery of such equipment usually took from 6 weeks to several months after ordered, plaintiff moved early to get it out of reasonable caution, so as to be

---

3. A footnote to the quoted passage collects many corroborating precedents.

ready whenever defendant gave a proceed order for excavation. Plaintiff knew from the very start that there would be delay about going ahead with excavation and should have allowed in its bid for that delay as regards rental time on the dragline. Further, the July 7 language was stated only in terms of an approximation and is inconclusive on its face. It is "too soft to call for a judicially enforceable warranty-without-fault," absent clear proof of Government fault or unacceptable conduct. Koppers/Clough v. United States, 201 Ct.Cl. 344, 361–62 (1973). There is no such fault or conduct here on defendant's part.

We come then, for all the foregoing reasons, to the conclusion on the breach claim that plaintiff has shown no fault leading to breach by defendant of an express warranty not to delay or to permit plaintiff to proceed on a definite date. Defendant is fully entitled to enforce its rights as set forth in the contract. The contract reserved the right to suspend work without defendant's being liable for costs arising from attendant delay. Plaintiff agreed to such terms. The court must enforce a mutually agreed-upon contract according to its terms. Aragona Constr. Co. v. United States, 165 Ct.Cl. 382, 390 (1964). We reject the breach of contract claim and plaintiff's motion for summary judgment thereon. Plaintiff has demanded, in the alternative, a plenary evidentiary hearing on its breach claim, but poses no unresolved issues of fact to justify it and the same is denied.

### Liquidated Damages

Extension of time under this contract determined that the revised completion date would be September 26, 1967. Plaintiff completed work on October 6, 1967, ten days late. Liquidated damages at the contract rate of $95 per day were assessed against plaintiff. On August 12, 1967, plaintiff had requested an extension of time of 11 days, which if granted would have forestalled assessment of liquidated damages and bring about their return now. In this request plaintiff complained about the lost rental time on equipment but also said "we lost several months of our best working time" on account of the delays. On October 5, 1967, plaintiff was asked to furnish a detailed breakdown of the 11 days for which an extension of time was requested, showing dates and reasons for the request. The stipulation in this case states:

No reply was received from the contractor, and he was requested by telephone on October 16 and October 23, 1967, to furnish the reasons for the requested additional extension of time. No reasons being furnished, the request for an extension of 11 days was disallowed.

Article 5(d), General Provisions, provides that the contractor shall not be charged with the costs of delay if:

(1) The delay in the completion of the work arises from unforeseeable causes beyond the contol and without the fault or negligence of the Contractor, including but not restricted to * * * acts of another contractor in the performance of a contract with the Government * * * unusually severe weather * * * and

(2) The Contractor, within 10 days from the beginning of any such delay * * * notifies the Contracting Officer in writing of the causes of delay.

If the 11-day delay of which plaintiff now complains was due to unusually severe weather conditions, plaintiff failed to substantiate it. The contract was extended considerably beyond the original completion date. Plaintiff was afforded an administrative hearing but at that time failed to clarify its claim for the additional 11-day extension due to unusually severe weather. The Government itself offered some evidence that rainfall in certain months of 1967 was greater than in some corresponding months of 1966. But, the record is absolutely devoid of any evidence that this

was an "unusually severe" condition, or one that could not reasonably have been anticipated for inclusion in the bid price. Unusually severe weather must be construed to mean adverse weather which at the time of year in which it occurred is unusual for the place in which it occurred. This condition is not established simply because weather charts may indicate that on a certain day the precipitation is greater than on some other days in some other year, since variance in weather patterns is to be expected. Plaintiff was given a number of suspension orders when work could not be performed due to weather. There is no evidence that any extension was refused on this account or for any other excusable delay provided for in the contract. No other basis for remission of the liquidated damages was ever asserted. Plaintiff's brief to the court, however, argues that liquidated damages must be waived where the contractor is not responsible for the failure to complete on time and the other party is responsible. Of course, this is the rule. United States v. United Eng'r & Contracting Co., 234 U.S. 236, 242, 34 S.Ct. 843, 58 L.Ed. 1294 (1914). But, that is not what happened here. The delay was anticipated and agreed to by the parties, as we have seen. Moreover, the Government is not obligated to anticipate acts of God and abnormal conditions that might interfere with contract performance. It is supposed that bidders allow for this in their bids. MacArthur Bros. Co. v. United States, 258 U.S. 6, 42 S.Ct. 225, 66 L.Ed. 433 (1922); Christie v. United States, 237 U.S. 234, 245, 35 S.Ct. 565, 59 L.Ed. 933 (1915); Hardeman-Monier-Hutcherson v. United States, 458 F.2d 1364, 198 Ct.Cl. 472 (1972); Banks Constr. Co. v. United States, 364 F.2d 357, 176 Ct.Cl. 1302 (1966). Here, there is no evidence of such conditions beyond extensions allowed. Of course, where defendant has information about such conditions not reasonably available to the contractor, it is under a duty to divulge such information or pay damages for it has an implied duty not to do anything to delay contract performance. L. L. Hall Constr. Co. v. United States, *supra;* Metropolitan Paving Co. v. United States, 325 F.2d 241, 163 Ct.Cl. 420, (1963); Peter Kiewit Sons' Co. v. United States, 151 F.Supp. 726, 138 Ct.Cl. 668 (1957).

 Plaintiff's claim for remission of liquidated damages failed for want of proof before the AGBCA. We hold that board's decision to be binding on the court and on the parties under the disputes clause of the contract and the Wunderlich Act, 41 U.S.C. §§ 321, 322, since it was in no way arbitrary or capricious, is supported by substantial evidence, and is not erroneous as a matter of law.

Plaintiff's motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted. The petition is dismissed.