NEWMAN, Circuit Judge,
dissenting.
In this contract between General Dynamics and the Navy’s Space and Naval Warfare Systems Command, the Armed Services Board of Contract Appeals sustained the right of General Dynamics to refuse eleven Delivery Orders, because the orders were not in accordance with the contract’s requirement for written and signed orders placed in the mail. Seven of the Orders were placed one day before the end of the last option period, and three were placed on the last day of the last option period. J.A. 288-89. The Board held that General Dynamics has the legal right to rely on the contract terms for Delivery Orders, had not waived that right, and was not estopped from exercising that right.[1] My colleagues on this panel overturn the Board’s holding and excuse the Navy’s admitted noncompliance with the contract ordering terms, even as the Navy required General Dynamics to comply with all of the concededly noncomplying Delivery Orders.
I respectfully dissent.
Discussion
The contract includes several clauses directed to how ordering is required to be done. The Ordering Clause includes the following condition for electronic commerce methods:
(c) If mailed, a delivery order or task order is considered ‘issued’ when the Government deposits the order in the mail. Orders may be issued orally, by facsimile, or by electronic commerce methods only if authorized in the Schedule.
Ordering Clause, J.A. 105 (citing FAR 52.216-18 (1995)) (emphases added). The Schedule for this contract did not authorize electronic commerce methods. The contract requires that the Ordering Clause be followed:
(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause.
FAR Clauses, J.A. 101, incorporating by reference FAR 52.216-22 (1995). The contract provides that exercise of the contract options to produce and deliver specified items must be written, and signed by the Contracting Officer:
(a) The Government may exercise options in whole or in part any time during the option periods set forth herein to require the Contractor to produce and deliver hardware items or provide services specified in the contract.... These options shall be exercised if at all by written notice signed by the Contracting Officer, transmitted to the contractor at any time during the option exercise period....
Contract Clause H-5, J.A. 81 (emphasis added).
The Board found that General Dynamics was not estopped from relying on these contract provisions and refusing to accept these Delivery Orders, although General Dynamics had previously accepted electronic orders. The Board found the undisputed fact that electronic commerce methods were not authorized in the contract Schedule. Board Op. at 3, Finding of Fact *1365 (FF) 14. The Board found that the parties never discussed changing the requirements of the Ordering Clause, id., FF 13, although there were many formal contract “modifications.” During performance, modifications were made to various aspects of the contract, but not to these clauses. All of the modifications stated that other provisions “remain[ ] unchanged and in fall force and effect.” Id., FF 13 (internal quotation marks omitted). The Board held the parties to the terms of their contract; this court now holds otherwise.
The Board’s ruling is fully supported by the law of contracts, by precedent for government contracts, by the Board’s findings of fact and conclusions of law, and by the standard of judicial review under the Contract Disputes Act. Nonetheless this court, breaking new ground in governmenVcontractor relationships, reverses the Board and holds that General Dynamics is equitably estopped from invoking the contract’s ordering provisions.
When an appellate court overturns a decision of a Board of Contract Appeals, there must be sound ground to override that decision, in law or in equity. The Contract Disputes Act sets the standard for review of factual findings:
notwithstanding any contract provision, regulation, or rules of law to the contrary, the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.
41 U.S.C. § 609(b); see generally Erickson Air Crane Co. of Wash., Inc. v. United States, 731 F.2d 810, 814 (Fed.Cir.1984) (“This court has a very limited review of boards of contract appeals.”).
The panel majority now redesignates some critical findings of fact as rulings of law, and thereby finds that the Board “abused” its discretion as a matter of law. The issue of equitable estoppel is an equitable determination, based on underlying findings of fact. Findings as to what was “believed,” “known,” “intended,” “aware,” “implied,” and “relied on,” are surely relevant to equity, but they are quintessential questions of fact, not matters of law. No party argued otherwise. Nonetheless, the court now rules that the Board abused its discretion, stating that the Board’s findings of fact are really rulings of law and thus subject to de novo determination by this court. Maj. Op. at 1361-63.
My colleagues do not discuss the evidence supporting the Board’s findings of fact as to the parties’ understanding and intent and reliance. This departure from the standards of appellate review does not add stability to the Contract Disputes Act, and ignores our own admonition that “the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.” Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed.Cir.1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C.Cir.1971)).
The Navy does not dispute that this contract requires that orders be in writing and signed by the contracting officer, and that electronic ordering is forbidden. Ten of the eleven rejected Delivery Orders were placed by email 0-1 day before contract expiration. Precedent is clear that when the contract is explicit as to the ordering terms, these terms are material. And precedent clearly demonstrates that the government requires rigorous adher *1366 ence to contract terms, and that the Board and the courts have generally declined to provide equitable relief from explicit contract provisions. The application of this rule to contracts with the government is reflected in the understanding that contracts with the government can be changed only by formal “modification.”
The Board made eighty findings of fact, sixty-two of which relate to the Board’s decision that General Dynamics was not estopped from invoking the contract requirement that Delivery Orders must be in writing and signed. Thus the Board held the Navy to the terms of this contract. “A long line of our precedent has established that agreed-upon contract terms must be enforced,” reflecting “the general rule of contract law that contracting parties must be held to their agreements.” Madigan v. Hobin Lumber Co., 986 F.2d 1401, 1403, 1404 (Fed.Cir.1993) (rejecting contractor pleas for mitigation or other departures from the contract terms) (citing Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1564-65 (Fed.Cir.1990) (enforcing contractual waiver of both Article III and Seventh Amendment rights); Do-Well Mach. Shop, Inc. v. United States, 870 F.2d 637, 640-41 (Fed.Cir.1989) (enforcing contractual agreement of a limitations period for presenting a termination claim); McCall v. United States Postal Serv., 839 F.2d 664, 667 (Fed.Cir.1988) (enforcing contractual waiver of right to appeal because “choice was knowing and voluntary”); Broome Constr., Inc. v. United States, 492 F.2d 829, 834 (Ct.Cl.1974) (“The court must enforce a mutually agreed-upon contract according to its terms.”); Aragona Constr. Co. v. United States, 165 Ct.Cl. 382, 390 (1964) (enforcing contractual provision requiring the contractor to comply with change orders of the contracting officer)).
In Appeal of Mach II, ASBCA No. 56630, 10-1 BCA 34357, 2010 WL 292734 (A.S.B.C.A. Jan.12, 2010) the contractor sought to invoke equitable estoppel or waiver to obtain payment for an order fulfilled despite the absence of the contracting officer’s signature, for the contractor had filled such unsigned orders in the past. Applying precedent, the Board held that the ordering clause required a signed order, and that although the contractor had been told that the contracting officer would “return a signed order,” this was not done, and the government was held not liable for payment. Cf. Heath Constr., Inc., B-403417, 2010 WL 3491945 (Comp. Gen. Sep. 1, 2010) (rejecting the bidder’s protest following a denial of its bid because although the bidder sent its bid by facsimile after the contract specialist informed the bidder that submitting bids by facsimile was acceptable and provided the bidder instructions on how to do so, the government’s invitation for bids did not authorize bids to be submitted by facsimile).
The Board observed that: “The Navy has not directed us to any case in which waiver or estoppel has been applied in the event of an improper option exercise or improper issuance of a DO under an IDIQ contract that the contractor protested pri- or to performance.” Board Op. at 14. Nor has the Navy offered any such case to this court. The court nonetheless finds that the government was not “aware” that General Dynamics intended to refuse the disputed Delivery Orders, and holds that the Board abused its discretion in refusing to permit the Navy to violate the contract based on ignorance of its terms. My colleagues thus depart from the proper standard of review, as well as from precedent. Both sides to a contract are charged with knowledge of their contract’s terms. This is essential in contracts with the government, lest the procurement system fall into disarray. See generally Maxima Corp. v. *1367 United States, 847 F.2d 1549, 1556 (Fed.Cir.1988) (“Neither the contractor nor the government can avoid its legal responsibilities by asserting ignorance [of the contract terms].”). And although the Navy faults General Dynamics for not attempting to change this contract term, Appellant’s Br. at 18-19, this is a curious argument, for it is not clear why a contractor must act to change a provision that is for its benefit.
The Board reviewed the specific circumstances of this contract, in explaining its reasoning for holding the Navy to the contract terms. The Board determined that the “lack of negotiations prior to electronic ordering is material in distinguishing the DOs at issue from the DOs pointed to by the government as evidence of the parties’ past conduct.” Board Op. at 15 (citing FF 40, 49). My colleagues do not comment on the Board’s reasoning and findings. Instead, my colleagues criticize the Board for applying government procurement law and precedent to determine the question of estoppel on the facts of this case, my colleagues holding that patent infringement law and precedent of estoppel apply.
The Board applied Rel-Reeves, Inc. v. United States, 534 F.2d 274, 296-97 (Ct.Cl.1976) and other government contract precedent, which analyze equitable estoppel under a four-part standard. As applied herein by the Board, the four predicate inquiries for equitable estoppel are: “(1) [General Dynamics] knew the facts; (2) it intended that its conduct be acted upon or acted such that the Navy had a right to believe it was so intended; (3) the Navy was ignorant of the true facts; and (4) the Navy relied upon [General Dynamics’] conduct to its injury.” Board Op. at 15. Precedent illustrates the acceptance of this four-part analysis. E.g., Advanced Materials, Inc. v. Perry, 108 F.3d 307, 311 (Fed.Cir.1997) (“This court has set forth a four element test to establish an estoppel claim in this situation.”) (holding that the government was not estopped from relying on a provision requiring timely written notice, despite oral notice and the contracting officers’ written assurances); JANA, Inc. v. United States, 936 F.2d 1265, 1270 (Fed.Cir.1991) (citing the four-part test, and holding that the government was not estopped to assert overpayments against contractor); Am. Elec. Labs., Inc. v. United States, 774 F.2d 1110, 1113 (Fed.Cir.1985) (“Four elements must be present to establish an estoppel.... ”); Hughes Aircraft Corp., ASBCA No. 24601, 83-1 BCA ¶ 16,396, 1983 WL 7542 (A.S.B.C.A. Mar.4, 1983); Emeco Indus., Inc. v. United States, 485 F.2d 652, 657 (Ct.Cl.1973); United States v. Georgia-Pacific Co., 421 F.2d 92, 96 (9th Cir.1970).
My colleagues fault the Board for analyzing equitable estoppel under this established four-part test, and rule that “a different standard” applies, namely, the three-part test stated in A.C. Aukerman Co. v. R.L. Chaides Construction Co., 960 F.2d 1020 (Fed.Cir.1992) (en banc). Maj. Op. at 1359-60. Aukerman was a patent infringement suit between private parties, where this court considered which factual issues are relevant to whether a patentee is estopped from filing suit, after threatening infringement and then remaining silent for a time. The court in Aukerman was concerned with straightening out some conflicting precedent that “confusingly intertwines the elements of laches and equitable estoppel.” Aukerman, 960 F.2d at 1042.[2] The court was not concerned with contract law or any contract provision, but *1368 with threats of litigation. Despite these differences, commentary has noted only a semantic difference between the three-part and four-part standards for equitable estoppel. See Dan B. Dobbs, Law of Remedies 85 & n.6 (2d ed. 1993) (explaining that lack of knowledge of the true facts by the party invoking estoppel is covered by reliance).
Aukerman has not been viewed as announcing a new general standard for equitable estoppel in all areas of fact and law, negating precedent discussing estoppel in government procurement. See, e.g., John Cibinc, Jr., Ralph C. Nash, Jr. & James F. Nagle, Administration of Government Contracts 65-66 (4th ed. 2006) (reciting four-part standard); 1 John Cosgrove McBridge & Thomas J. Touhey, Government Contracts: Law, Administration, Procedure § 4.100[1][b] (Walter A.I. Wilson, ed., Release No. 445 2010) (same). This court similarly did not proclaim otherwise, until today. Today the court holds that the application of the Aukerman estoppel criteria leads to a different result, imposing estoppel on General Dynamics and prohibiting it from relying on the contract provision governing the placement of Delivery Orders. Maj. Op. at 1361.
There are differences between estoppel arising from written contract terms, and estoppel arising from threats of patent infringement. Estoppel is a doctrine of equity, with “[mjorality and justice” as its foundation. Harvey Radio Labs., Inc. v. United States, 115 F.Supp. 444, 449 (Ct.Cl.1953). This court recognized in Aukerman that the estoppel doctrine “is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules.” Aukerman, 960 F.2d at 1041. Nonetheless, the court now announces that Aukerman provides the “proper test for equitable estoppel” in procurement law. Maj. Op. at 1361. Thus my colleagues rule that the Board erred in law, in holding that the four-part standard of Rel-Reeves applies, id. (“[Tjhe Board failed to analyze estoppel under the correct legal test .... ”), and on this rationale my colleagues reject the Board’s findings of fact. For example, the court now holds that the factual elements of knowledge and reliance do not require that General Dynamics knew the facts, and holds that the Navy is entitled to estoppel as long as it was not “aware that General Dynamics intended to refuse future delivery orders if they were sent via email.” Id. at 1362. My colleagues reject — calling it a matter of law— the Board’s ruling that the Navy is charged with knowledge of its contract. Instead, the court holds — calling it a matter of law — that the contractor cannot rely on the contract Delivery Order provision unless it had informed the government, in advance, that it will rely on this provision. Id. at 1361-62 (“The knowledge at issue is not General Dynamics’ actual knowledge of the contract terms, but rather its knowledge that it was accepting emailed delivery orders.”); id. at 1362 (“The issue is not whether the government had knowledge that the contract, as written, had a prohibition against email, but rather whether the government was aware that General Dynamics intended to refuse future delivery orders if they were sent via email.”). These irregular holdings that the government need not know the content of its contracts and the contractor cannot rely on a provision that is for its benefit, do not impart stability to government contracting.
The Navy argues that General Dynamics behaved misleadingly by failing to object to the Navy’s violation of the prohibition on electronic communication. *1369 However, the Board found that the Navy did not rely on any conduct of General Dynamics with respect to acceptance of email orders, but issued the contested delivery orders after negotiations for the fifth option period had fallen through. The Board found that “CO Lopez admitted that [General Dynamics] had nothing to do with his or [the Navy’s] decisions to send DOs by e-mail.” Board Op. at 10, FF 60. The Board found that General Dynamics did not possess knowledge unavailable to the Navy, and that General Dynamics did not deliberately delay informing the Navy or “conceal! ] any prospect that [it] might reject” these Delivery Orders. Board Op. at 8, FF 50. The Board’s findings are fully in accord with precedent, and are not fraudulent or arbitrary or capricious or grossly erroneous or unsupported by substantial evidence. The Board’s conclusion on the facts and premises of this case is within its discretionary authority and in accordance with law, and requires affirmance. From the court’s contrary ruling, I must, respectfully, dissent.

. Appeal of General Dynamics C4 Sys., Inc., ASBCA No. 54988, 09-2 BCA ¶ 34150, 2009 WL 1464387 (A.S.B.C.A. May 8, 2009) (Board Op.).

. The Aukerman decision overruled the holding in Jamesbury Corp. v. Litton Industrial Products, Inc., 839 F.2d 1544 (Fed.Cir.1988) that equitable estoppel required "(1) unreasonable and inexcusable delay in filing suit, (2) prejudice to the infringer, (3) affirmative conduct by the patentee inducing the belief that it abandoned its claims against the al *1368 leged infringer, and (4) detrimental reliance by the infringer,” id. at 1553-54, for that holding confused laches with estoppel.