**W.G. YATES & SONS CONSTRUCTION COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 96–477C.

United States Court of Federal Claims.

Aug. 5, 2002.*

Clarence M. Leland, C.M. Leland, Ltd., Brandon, Mississippi, for plaintiff.

Kenneth M. Dintzer, James Anderson, United States Department of Justice, Washington, D.C., for defendant.

## OPINION

HODGES, Judge.

This is a subcontractor's claim for defective specifications related to a motorized reel that defendant mentioned by name as conforming. Plaintiff contends that it relied on a price quote from the reel's distributor in preparing its bid. Plaintiff discovered six months later—when it ordered the reel—that it was a custom model that the manufacturer had not produced in some years. As a result, plaintiff paid substantially more for another system that conformed to defendant's specifications. Plaintiff sues for the difference, claiming that defendant's use of a particular manufacturer was a defective specification when it turned out that the system no longer was in production. Defendant argues that the manufacturer listed in the bid documents was a suggestion and not a requirement; plaintiff was always free to substitute with an "approved equal." We ruled for defendant at the close of trial on this Count of plaintiff's complaint.

## I. BACKGROUND

Plaintiff contracted with the United States for the construction of Composite Maintenance Hangar and Supporting Facilities at

* This opinion and order was filed on March 15, 2002. It is being reissued for publication at defendant's request.

the Air National Guard Base in Meridian, Mississippi. Yates entered into a subcontract with Stratton for certain electrical work required under the contract. The contract required Yates to construct a new composite hangar facility to service and maintain aircraft. The project included motorized cable reels that were to be mounted on supports. The cables could be used to supply compressed air, water, or electricity for aircraft maintenance. The Government apparently was not sure how large or heavy the reels would be because the specifications provided only representational drawings and a provision that the cost of supplying larger or heavier duty "brackets" as they were called, would be borne by the contractor. It is undisputed that the reels were to be motor-driven.

The specifications mentioned three manufacturers of reels that defendant would find acceptable. These were Appleton, Burton, and Aero-motive. Plaintiff's electrical subcontractor felt that it would be advisable to use a company the Government mentioned by name, so it chose Appleton. Stratton obtained a price for the reels from the Appleton distributor, but it did not obtain quotes from either Burton or Aero-motive at that time.

When Stratton told Appleton's distributor, months into the contract, that it was ready for the reels, the distributor discovered—apparently for the first time—that the motorized reel was a custom model that Appleton had not made for at least three years. Appleton declined to complete the custom order for the cable reels that plaintiff required.

Stratton sought other suggestions from the Contracting Officer for conforming motorized reels. The CO provided plaintiff a list of three names including one that had been mentioned in the original bid materials. Stratton asked for bids from the manufacturers on the list provided by the Government and obtained two prices. It accepted the lower bid, which was much higher then the Appleton reel as quoted by the distributor months before. In addition, Stratton had to build a more substantial braces or supports for the reels than it anticipated.

Plaintiff's claim is for these differences in costs. It sued the Government claiming that the cable reels were seven times the price of the model on which its bid was based. However, it's bid was based on the wrong type of reel. The Government did not require the Appleton cable reels. Appleton was listed as an approved manufacturer, but the Government's contract makes it clear that another manufacturer could be used.

When Stratton obtained the price of the Appleton reel from the distributor, the distributor gave the price for an Appleton spring-loaded reel. He could not have quoted a proper price for the motor-driven reel because that reel did not exist. The catalog that the distributor testified he used to price the reel states clearly that for custom items, the distributor must call the manufacturer for a price. The motorized reel is a custom item. Neither the contractor nor the distributor called Appleton for a quote on the motorized reels. The price that Stratton used in the bid could not have been for motorized reels. Therefore, even if defendant were liable for defective specifications, we would not have sufficient evidence to determine damages.

## II. DISCUSSION

### A.

■ The Government warrants that conformance with its specifications will result in satisfactory completion of the work. *United States v. Spearin*, 248 U.S. 132, 137, 54 Ct.Cl. 187, 39 S.Ct. 59, 63 L.Ed. 166 (1918). The Government is liable when its specifications create problems that a contractor could not reasonably foresee. *Id.* When the Government provides a contractor with defective specifications, it is deemed to have breached an implied warranty that satisfactory contract performance will result from adherence to the specifications. The contractor is entitled to recover costs proximately flowing from the breach. *Franklin Pavkov Constr. Co. v. Roche*, 279 F.3d 989, 995 (Fed.Cir. 2002). Although government-furnished plans need not be perfect, they must be adequate for the task or "reasonably accurate." *Standard Steel Car Co. v. United States*, 67 Ct.Cl.

445, 472 (1929). *See John McShain, Inc. v. United States*, 188 Ct.Cl. 830, 412 F.2d 1281 (1969) (plaintiff was entitled to recover damages from defendant for breach of warranty because defendant furnished plaintiff with drawings that were so defective they caused delay in construction of desired building).

■ The government specifications in this case required that products be "manufactured by one of the following or approved equal (for each type of reel): Appleton Electric Co.; Aero-motive; Burton Electrical Co." Under the heading Product Options and Substitutions, the specifications stated, "[f]or Products specified by naming several products of manufacturers, or approved equal, select any one of the products or manufacturers named, or an approved equal, which complies with the specifications."

These specifications do not require or warrant Appleton reels. Defendant suggested a manufacturer that made a reel it believed would fit the specifications. It would have accepted a substitute product, an "approved equal." *See Nager Electric Co. v. United States*, 194 Ct.Cl. 835, 442 F.2d 936 (1971).

The Government is not responsible for any representations that Appleton's distributor might have made to Stratton about the suitability of a particular reel or its availability or price. The distributor gave Stratton a price for the Appleton RW300 reel prior to bid in 1992. When Stratton needed the reel, Appleton responded:

> In the past, we manufactured many custom or special reels built to specification for particular job applications. In 1989, we discontinued manufacturing and quoting custom or special reels. We do continue to manufacture reels, however, our line is now limited to only the standard reels listed in our catalog. Our standard RW300 series of reels are not motor driven units. These are spring driven units as described in our catalog on page W2–42.

A phone call from either Stratton or the distributor would have informed Stratton that it was basing its bid on a reel that had not been manufactured since 1989. Assuming the distributor had a catalog and current price list, it is difficult to understand how he made such an error. This raises the next issue, which is determination of damages.

## B.

If defendant should have known that the reel it mentioned in the specifications no longer was being manufactured, and if that oversight could be viewed as a breach of warranty, we would have no means of establishing damages. Plaintiff argues that its cost of completing the project greatly exceeded pre-bid estimates, but we do not know how much of that extra cost is attributable to the reels. The reel that Appleton's distributor quoted was not a motor-driven reel; it was spring-loaded. Everyone agrees that the specifications require a motorized reel. We have no evidence in the record of what an Appleton motor-driven reel would have cost, had it been available. Plaintiff is comparing a non-conforming spring loaded reel to a motorized reel that met all government specifications and claiming that this difference is the basis for its damages.

> A claimant need not prove his damages with absolute certainty or mathematical exactitude. It is sufficient if he furnishes the court with a reasonable basis for computation, even though the result is only approximate. Yet this leniency as to the actual mechanics of computation does not relieve the contractor of his essential burden of establishing the fundamental facts of liability, causation, and resultant injury.

*Wunderlich Contracting Co. v. United States*, 173 Ct.Cl. 180, 351 F.2d 956, 968–69 (1965) (citations omitted). Broad generalities and suggestions that defendant must have caused some damage are not sufficient. *Id.* at 199, 351 F.2d 956 (citations omitted).

Plaintiff paid more than it anticipated for the cable reels because of information from Appleton's distributor. No satisfactory evidence was offered to show the difference between the amount plaintiff paid for the reel that the Government accepted as conforming and the amount it would have paid for a conforming motorized Appleton cable reel had it been available.

### III. CONCLUSION

Defendant mentioned three manufacturers in the specifications as suggestions or examples. Purchasing equipment from the named manufacturers was not a requirement. In each instance, the use of brand names was followed by the phrase, "or approved equal." Defendant had no more responsibility for determining whether a suggested item was still in production than did plaintiff or other bidders. Plaintiff was assisted in its bid by an Appleton distributor, who was in a far better position to determine its availability than the Government. For these and other reasons described on the record of trial, we ruled for defendant.

The Clerk will dismiss plaintiff's complaint. No costs.